577 So.2d 795 (1991)
Charles V. SPATARO, Jr. Plaintiff/Appellee,
v.
The STATE of Louisiana Through the DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, OFFICE OF MOTOR VEHICLES, Defendant/Appellant.
No. 22139-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1991.
James R. Phillips, Bossier City, for defendant/ appellant.
Robert W. Raley, Bossier City, for plaintiff/ appellee.
Before SEXTON, LINDSAY and BROWN, JJ.
LINDSAY, Judge.
The defendant, the State of Louisiana, through the Department of Public Safety and Corrections, Office of Motor Vehicles (the Department), appeals from a trial court judgment finding that a driver's license issued on December 6, 1986, to the plaintiff, Charles V. Spataro, Jr., is valid and in good standing. We affirm the trial court judgment.

FACTS
On May 18, 1983, the plaintiff was convicted of driving while intoxicated, second offense. As a consequence of that conviction, the plaintiff was notified by the Department of Public Safety on July 23, 1983 that his license was being revoked for one year pursuant to LSA-R.S. 32:414. The plaintiff received notice of this revocation on August 1, 1983. However, on July 31, 1983, the plaintiff was stopped for a traffic violation and his driver's license was confiscated by Bossier City Police officers.
On August 2, 1983, plaintiff filed a rule against the Department, seeking a restricted license under LSA-R.S. 32:415.1, claiming that because he was employed as a truck driver, he required a restricted license in order to earn a livelihood. In connection with his petition for a restricted license, plaintiff also obtained a temporary restraining order prohibiting the revocation of his driving privileges "until the return date of the rule nisi issued herein." The rule was made returnable on August 25, 1983. He also obtained an order directing the Bossier City Police to return his license, forthwith.
*796 On or about August 25, 1983, a hearing was held on plaintiff's petition for a restricted license.[1] At the conclusion of the hearing, the court ruled that the plaintiff was entitled to receive a restricted license. However, this ruling was never reduced to a written judgment. Therefore, Mr. Spataro never obtained a restricted license. Presumably, Mr. Spataro simply continued to drive on his current license which the trial court had ordered returned to him by the Bossier Police before the 1983 hearing.
On December 8, 1986, Mr. Spataro obtained an unrestricted driver's license. The Department never detected from their records that his driver's license had been under revocation or that it should have been issued with restrictions.
In late 1989, the plaintiff was again stopped for a traffic offense. At that time, the Department's computer records showed that his driver's license had been ordered revoked in 1983.
On September 7, 1989, the plaintiff filed the present rule to show cause and obtained a restraining order, arguing that the period of revocation following his 1983 conviction had been completed and that his current license was valid.
On October 26, 1989, a hearing was held on plaintiff's claim that his 1986 driver's license was valid and in good standing. The plaintiff argued that the one year revocation period had long since expired and that his license was no longer under revocation. The Department argued that the temporary restraining order which the plaintiff obtained in 1983 prevented the one year revocation period from beginning to run. The Department argued that because the plaintiff never obtained a written judgment allowing him to obtain a restricted driver's license and because he was not subjected to a one year revocation period or a period with a restricted license, no penalty had ever been imposed on him as required by law.
The case was presented to the trial court on stipulations. The court found in favor of the plaintiff. The court stated that even though no judgment was ever signed awarding Mr. Spataro a restricted driver's license, and even though he never obtained such a license, he had operated a vehicle for approximately five years without "any violation of the law." The court stated that the Department's computer should have revealed the 1983 revocation proceedings before the regular driver's license was issued in 1986. However, since the state did, in fact, issue the 1986 license, that license was valid.
Accordingly, the trial court ordered the Department to amend its records to reflect that the plaintiff's 1986 driver's license was valid and in good standing. The Department appealed.

DISCUSSION
LSA-R.S. 32:414(B) provides that following a conviction or plea of guilty for driving while intoxicated second offense, the Department shall forthwith revoke the license of the person adjudicated for a period of twelve months.[2] When the Department orders the revocation of a driver's license under this statute, the twelve month period of revocation begins to run when the Department receives the person's driver's license, when the license expires or upon proof of its loss. LSA-R.S. 32:414(G)(1)(a).[3]
*797 However, rather than suffer a total revocation of his license, a person may seek a restricted driver's license in order to enable him to earn a livelihood. The procedure for obtaining a restricted driver's license is outlined in LSA-R.S. 32:415.1(A)(1).[4]
If suit for a restricted driver's license is filed and the court finds, after a contradictory hearing with the Department, that a person requires a driver's license to enable him to continue to earn a livelihood, the court may grant a restricted license. LSA-R.S. 32:415.1(A).
After the court has ruled that a person is entitled to a restricted license and sets the restrictions, the person must follow the procedure set forth in LSA-R.S. 32:415.1(B) which provides:
B. A copy of the order shall be sent to the department along with a copy of the conviction notice. A copy of the order containing the restrictions shall be attached to the license of the person convicted and must be in possession of the person whenever he is operating a motor vehicle. A restricted license shall be issued by the department and designated by a large red R printed on the face of the license. The term of the restrictions shall be the same as the original suspension, cancellation or revocation.
In this case, plaintiff's license was revoked by order of the Department on or about July 23, 1983. However, that revocation order was stayed by the trial court's temporary restraining order issued on August 2, 1983. The effect of this temporary restraining order was to stay the Department's revocation order until the hearing, which was held on or about August 25, 1983. After this hearing, the stay order was no longer in effect. Following the hearing, in order for plaintiff to obtain a restricted driver's license, it was incumbent upon him to obtain a written judgment/order and present it to the Department in accordance with LSA-R.S. 32:415.1(B), supra. Until that occurred, no restricted license could be issued nor was a restricted license in effect, even though the trial court had approved the issuance of such a license at the conclusion of the 1983 hearing. As in other civil cases where a trial court renders a decision at the conclusion of the trial, the ruling or decision does not become effective until a written judgment is signed by the trial court. LSA-C.C.P. Art. 1911.
Since no written judgment or order was signed by the trial court, no restrictive license was ever issued. Therefore, the original revocation order issued by the state, directing the revocation of plaintiff's driver's license, remained in effect following the expiration of the stay order on August 25, 1983.
Although the revocation order was in effect, the twelve month period of revocation did not begin to run because none of the events occurred which begin the running of the period of revocation, i.e., the plaintiff did not surrender his operator's license, he never had an expired license because he managed to obtain an unrestricted license and his operator's license was never lost. In this case, Mr. Spataro simply did not follow the procedure necessary to obtain a restricted license. Therefore, he never served a period of revocation or restriction.
Under normal circumstances, the state would have been within its rights to enforce the original revocation order had it acted in a timely manner. Therefore, we must determine whether the lapse of time which has passed since the matter first arose in 1983, as well as the fact that the state issued an unrestricted driver's license, prevents the state from contesting the validity of the 1986 license.
We find, as did the trial court, that under the specific facts of this case, the driver's license issued to the plaintiff in 1986 is valid and in good standing. Further, any term of restriction or revocation formerly imposed on him by virtue of the conviction *798 in 1983 of driving while intoxicated, second offense, is no longer enforceable.
At any time after the hearing on the application for a restricted driver's license, the Department could have demanded the surrender of plaintiff's license. It did not do so. Therefore, we find that the Department, after a lapse of six years, is now estopped to deny the validity of the plaintiff's 1986 driver's license.
Equitable estoppel has been defined as the effect of voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Estoppel is not favored and is invoked sparingly because it acts to bar the normal assertion of rights. Estoppel is found only when the following elements are proven:
1. A representation by conduct or words;
2. A justifiable reliance;
3. A change in position to one's detriment because of the reliance.
The doctrine is based upon good faith and is designed to prevent any injustice by barring a party from taking a position contrary to its prior acts, admissions, representations or silence. Holiday Bossier Limited Partnership v. Louisiana Tax Commission, et al, 574 So.2d 1280 (La.App. 2d Cir.1991); KPW Associates v. S.S. Kresge Company, 535 So.2d 1173 (La.App. 2d Cir. 1988), writ denied 537 So.2d 1167 (La.1989); Lilly v. Angelo, 523 So.2d 899 (La.App. 4th Cir.1988).
In the present case, the Department's inaction during the years following the plaintiff's suit for a restricted license now serves as a bar to the imposition of restrictions on the plaintiff's driving privileges. The Department failed to take the plaintiff's driver's license from him following the court's ruling that he be issued a restricted license. The Department should have known that the plaintiff was to receive only a restricted license. However, in 1986, the Department issued the plaintiff a regular, unrestricted license. For six years, the Department took no action to enforce the court's order that the plaintiff's driving privileges be restricted. Because the Department failed to act during this period, on knowledge and information it should have had, the Department has waived any right which may have existed to restrict or revoke the plaintiff's driving privileges.
The revocation or restriction of the plaintiff's driver's license in 1983 was in the nature of a penalty imposed because of his conviction for driving while intoxicated, second offense. The statute provides that this penalty must be imposed "forthwith". LSA-R.S. 32:414(B). Although the statute does not define this term, we believe six years is too long to satisfy the demands of the statute. See and compare State v. Cornelison, 304 So.2d 758 (La.App. 4th Cir. 1974); Fontenot v. State, Department of Public Safety, 341 So.2d 80 (La.App. 3d Cir.1976); Sneed v. State, Department of Public Safety, 343 So.2d 336 (La.App. 2d Cir.1977), writ denied 345 So.2d 900 (La. 1977); Murphrey v. State, Department of Public Safety, 476 So.2d 1153 (La.App. 3d Cir.1985).
By analogy, we note that in the realm of criminal law, a sentence must be imposed following a conviction without unreasonable delay. LSA-C.Cr.P. Art. 874. The jurisprudence indicates that while the passage of almost two years before imposition of sentence may not necessarily constitute an unreasonable delay, the passage of almost four years without valid justification is unreasonable. See City of Winnfield v. Weems, 545 So.2d 717 (La.App. 2d Cir. 1989), writ denied 551 So.2d 1319 (La.1989) (delay of 22 months between remand and resentencing was not unreasonable); State v. Davis, 542 So.2d 856 (La.App. 3d Cir. 1989) (delay of three years and 9 months between conviction and sentence was unreasonable absent justifying factors); State v. Quinney, 543 So.2d 1050 (La.App. 3d Cir.1989), writ denied 545 So.2d 1040 (La.1989) (delay of 13 years between guilty plea and sentence was unreasonable absent justifying factors).
*799 Although the present case does not involve a criminal proceeding, we find this analogy persuasive. Six years constitutes an unreasonable delay in the imposition of the penalty of restricting the plaintiff's driving privileges.
Finally, part of the purpose of imposing restrictions or revocations upon driving offenders is not only to punish the offender but also to protect the public. For a significant period of time following the plaintiff's conviction for driving while intoxicated, second offense, he has shown that he is capable of safely operating a vehicle upon the state's highways. To impose restrictions upon him at this point in time would not serve the interest of justice.

CONCLUSION
For the reasons stated above, we affirm the trial court judgment in favor of the plaintiff, Charles V. Spataro, Jr. We find that his driver's license, issued in 1986, was valid.
AFFIRMED.

APPENDIX

Footnote:
2. LSA-R.S. 32:414(B) provides in pertinent part:
B. The department shall forthwith revoke the license of any person, for a period of twelve months, upon receiving satisfactory evidence of the conviction or the entry of a plea of guilty and a sentence thereupon or of the forfeiture of bail of any person charged with any of the following crimes: ...
(2) Conviction or entry of a plea of guilty and sentence thereupon, or of the forfeiture of bail of any such person on the second or subsequent offense for operating or being in actual physical control of a motor vehicle while under the influence of intoxicating beverages....
3. LSA-R.S. 32:414(G)(1)(a) provides:
Any period of suspension or revocation under this Chapter shall begin upon the receipt by the department of the operator's license of the person affected, upon the expiration of the operator's license, or upon proof of its loss.
4. LSA-R.S. 32:415.1(A)(1) provides in pertinent part:
A.(1) Upon suspension, revocation or cancellation of a person's driver's license for the first time only as provided for under R.S. 32:414 and R.S. 32:415, said person, after initial notice from the department, shall have the right to file a petition in the district court of a parish in which the applicant is domiciled alleging that revocation of his driving privileges will deprive him or his family of the necessities of life and will prevent him from earning a livelihood. The district court is vested with jurisdiction to set the matter for contradictory hearing in court upon ten days written notice to the department, and thereupon to determine whether the allegations of hardship have merit. Upon determination by the court that the lack of a license would deprive the person or his family of the necessities of life, the court may order that the person be granted by the department, a restricted license to enable the person to continue to support his family....
NOTES
[1] The actual date this hearing was held is not clear from the record. In his pleadings, the plaintiff states that the hearing was held on September 1, 1983. However, the minutes of the 1983 proceedings are not contained in this record. The facts in this case were largely gleaned from plaintiff's record with the Department of Public Safety, filed into evidence, and a stipulation entered into by the parties at the hearing held on October 26, 1989. At any rate, it appears that plaintiff's petition for a restricted license was heard in late August or early September, 1983.
[2] The text of this statute is set forth in an appendix attached to this opinion.
[3] This statute is set forth in the attached appendix. We note that this statute was amended by Acts 1989, No. 813 § 1. Prior to its amendment, the statute provided, in pertinent part, that the period of revocation "shall begin upon receipt by the department of the operator's license of the person affected or upon proof of its loss." In 1989, the statute was amended to add an additional point from which to calculate the running of a period of revocation. In addition to receipt of the license or proof of its loss, the statute also provides, that the period of revocation begins to run "upon the expiration of the operator's license."
[4] This statute is contained in an appendix attached to this opinion.