620 So.2d 1368 (1993)
Connie KNIPPERS, Plaintiff-Appellant,
v.
Dr. W.W. LAMBARD, et al., Defendants-Appellees.
No. 24872-CA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 1993.
Rehearing Denied August 12, 1993.
*1369 Bobby L. Culpepper, Jonesboro, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Samuel Caverlee, Cynthia C. Anderson, Shreveport, for defendants-appellees.
Before LINDSAY, VICTORY and WILLIAMS, JJ.
LINDSAY, Judge.
In this medical malpractice action, the plaintiff, Connie Knippers, appeals from a trial court judgment sustaining an exception of prescription. For the following reasons, we affirm the judgment of the trial court.

*1370 FACTS

In April, 1988, the plaintiff discovered that she had a mass in her abdomen. She was referred to a gynecologist, Dr. W.W. Lambard, of the Women's Clinic in Minden. On April 11, 1988, Dr. Lambard performed exploratory surgery, assisted by Dr. J.R. Kemmerly. It was determined that the plaintiff had a large pelvic mass, which was removed along with her ovaries.
Shortly after surgery, the plaintiff began experiencing severe abdominal pain. She was referred to a urologist, Dr. F.J. Blell. Dr. Blell discovered that, as a result of the surgery done by Dr. Lambard, the plaintiff's left ureter had become blocked. The plaintiff's bladder became dry, she experienced leakage of urine into her abdomen and she suffered severe pain, nausea, vomiting and inability to urinate.
On April 19, 1988, Dr. Blell performed surgery to remove the blockage of the left ureter. A tube was inserted between the bladder and kidney and out the plaintiff's side to drain fluid. Eight to ten days later, Dr. Blell performed a surgical procedure to reposition the tube to allow better drainage. The plaintiff was discharged from the hospital on or about April 30, 1988.
Subsequently, the tube was removed by Dr. Blell at his office. The plaintiff continued to see Dr. Blell for check ups.
The plaintiff contends that on March 21, 1989, her counsel mailed a complaint to the Commissioner of Insurance in Baton Rouge requesting the appointment of a medical review panel. In this complaint, the plaintiff named as defendants Drs. Lambard and Kemmerly and the Women's Clinic, along with their liability insurer, Louisiana Medical Mutual Insurance Company (LAMMICO). The plaintiff also named Dr. Blell and the Minden Medical Center.[1]
On March 30, 1989, plaintiff's original complaint, signed by the plaintiff's attorney, was received in LAMMICO's office. LAMMICO also received an original letter addressed to the Commissioner of Insurance, requesting that the complaint be filed and that a medical review panel be appointed. The plaintiff contends that the original complaint, which was received by LAMMICO, was the complaint which she intended to send to the Commissioner of Insurance. At about the same time, and although the record is not clear on this point, it appears that counsel for the defendants received "courtesy copies" of this complaint.
The Commissioner of Insurance has no record of ever receiving the complaint allegedly mailed by plaintiff's counsel in March, 1989. The plaintiff concedes that the complaint was not sent by registered or certified mail. There is no proof that the complaint was in fact filed with the Commissioner of Insurance.
Plaintiff's counsel eventually learned that the Commissioner of Insurance never received the complaint allegedly mailed in March, 1989. Therefore, on June 6, 1989, counsel mailed a copy of the complaint to the Commissioner's office. On June 8, 1989, the copy of plaintiff's complaint requesting that a medical review panel be appointed, was stamped and filed with the Commissioner of Insurance.[2]
On June 25, 1990, the defendants filed an exception of prescription. In their exception, the defendants asserted that the plaintiff's surgery, which allegedly caused her harm, occurred on April 11, 1988 and the complaint requesting a medical review panel was not filed until June 6, 1989, more than one year after the commission of the alleged malpractice.
Argument on the exception was held on November 26, 1991. The plaintiff contended that it was not until several months after the surgery by Dr. Blell that he informed her that she should have her kidney checked regularly, because any infection neglected for more that four or five days could result in loss of the kidney. She argued that because she was not aware that she had received permanent injury until *1371 sometime in August, 1988, prescription on her claim did not begin to run until August, 1988. Therefore, even if the complaint was not filed until June 6, 1989, it was filed within one year of discovery of the damage. Further, the plaintiff argued that the defendants are estopped from asserting the exception of prescription because they received copies of the complaint sometime in March, 1989.
Following the argument on the exception of prescription, the case was taken under advisement. On September 16, 1992, the trial court filed its reasons for judgment. The trial court found that because the plaintiff's complaint was not filed with the Commissioner of Insurance nor mailed to that office by certified or registered mail before June 6, 1989, the action had prescribed. The trial court found that the defendants engaged in correspondence with the plaintiff's attorney on the basis of copies of a complaint the parties believed had been filed with the Commissioner. The trial court found that the defendants did not attempt to deceive the plaintiff, nor did they engage in any fraudulent conduct which would invoke the doctrine of equitable estoppel. Therefore, the exception of prescription was sustained and the plaintiff's case was dismissed. The plaintiff appealed.

PRESCRIPTIONKNOWLEDGE OF DAMAGE
The prescriptive period for medical malpractice claims is set forth in LSA-R.S. 9:5628 which provides in pertinent part:
A. No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined by R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Under this statute, plaintiff must bring a medical malpractice action within one year from the date of the alleged malpractice or within one year from the date the plaintiff discovers or should have discovered the facts upon which his cause of action is based. Chandarlis v. Shah, 535 So.2d 895 (La.App. 2d Cir.1988).
Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Chandarlis v. Shah, supra; Maung-U v. May, 556 So.2d 221 (La. App. 2d Cir.1990), writ denied 559 So.2d 1385 (La.1990).
Prescription commences and continues when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Percy v. State, E.A. Conway Memorial Hospital, 478 So.2d 570 (La.App. 2d Cir.1985).
Constructive knowledge sufficient to commence the running of prescription requires more than a mere apprehension that something might be wrong. Chandarlis v. Shah, supra; Maung-U v. May, supra; In re Medical Review Panel of Howard, 573 So.2d 472 (La.1991).
Thus, even if a malpractice victim is aware that an undesirable condition developed at some point in time after the medical treatment, prescription does not run as long as it is reasonable for the victim not to recognize that the condition may be related to the treatment. The proper focus is on the reasonableness of the tort victim's action or inaction. Chandarlis v. Shah, supra; Maung-U v. May, supra.
The jurisprudence is clear that this "discovery" does not require certain knowledge but merely sufficient information to incite curiosity as to the cause of the discomfort. Speights v. Caldwell Memorial Hospital, 463 So.2d 881 (La.App. 2d Cir.1985).
*1372 An injury need not be permanent to spawn a cause of action for damages. Percy v. State, E.A. Conway Memorial Hospital, supra. Whether caused by the false assurances or representations of doctors or by neglect of a patient, ignorance or misunderstanding of the probable extent or duration of injuries materially differs from ignorance of actionable harm which delays commencement of prescription. A satisfactory showing of the former does not excuse or justify ignorance of those facts that would alert a reasonable person that he or she is the victim of a tort. Percy v. State, E.A. Conway Memorial Hospital, supra.
In the present case, the record shows that immediately following the second surgery, Dr. Blell informed the plaintiff's husband that the corrective surgery had been necessitated by a problem with the surgery performed earlier by Dr. Lambard, which resulted in a blockage of the ureter. In the plaintiff's deposition testimony, she stated that she knew that the reason for the second surgery was to correct the problem created by the first surgery. However, she also stated that following the second surgery to correct the problem with her ureter, she thought she would recover completely and would not require future care. She testified that two or three months after she left the hospital following the corrective surgery, Dr. Blell informed her of the continuing risk of additional problems with the ureter which, if left unchecked, could result in the loss of the kidney. She was advised to have regular kidney checkups and was instructed to be alert to back pain which could signify kidney problems. She was told to report such pain to a physician immediately to prevent loss of the kidney. The plaintiff argues that it was not until this point that she realized her damage was permanent and she then took steps to file a medical malpractice claim.
The record does not support the plaintiff's contention that she did not discover her harm until several months after the corrective surgery. The plaintiff's own testimony as well as her medical records reflect that when she underwent corrective surgery on April 19, 1988, she was informed that her difficulty was a result of the surgical procedure performed by Dr. Lambard eight days earlier. Further, Dr. F.J. Blell, the urologist who performed the corrective surgery, testified by deposition that there was a possibility that due to the trauma to the ureter, scarring could occur at some time in the future which would block the flow of urine from the kidney into the bladder. Dr. Blell specifically testified that he informed the plaintiff, prior to her discharge from the hospital on April 30, 1988, that she would have continuing problems with her kidney and instructed her regarding the symptoms which she must be aware of in the future.
Our review of the record reveals that the plaintiff did not establish her claim that she was unaware of her damage until August, 1988. The plaintiff had actual knowledge following her corrective surgery on April 19, 1988 that the difficulty involving her kidney was the result of the surgery performed by Dr. Lambard. The plaintiff also had actual knowledge, prior to her discharge from the hospital on April 30, 1988, that the damage to her ureter would require continuing care in the future. Therefore, prescription on her medical malpractice claim began to run on April 30, 1988, at the latest.

FILING OF PETITION TO APPOINT MEDICAL REVIEW PANEL
The plaintiff claims that her petition requesting a review of her medical malpractice claim was mailed to the Commissioner of Insurance on March 21, 1989, but the petition was lost or misplaced by that office. The plaintiff argues that because the attorneys for all parties to the suit responded prior to June, 1989, the complaint must have been timely filed. This argument is meritless.
LSA-C.C. Art. 3462 provides:
Prescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent *1373 court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.
Regarding the filing of claims for medical malpractice, LSA-R.S. 40:1299.47(A)(2)(a) provides:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until sixty days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all solidary obligors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.
In the present case, the plaintiff sent the original cover letter and the complaint, which was to be filed with the Commissioner of Insurance, to one of the defendants, LAMMICO. The plaintiff apparently mailed courtesy copies of the complaint to the defendants in March, 1989. The record shows that the Commissioner never received a copy of the complaint in March. The plaintiff did not mail the complaint to the Commissioner of Insurance by certified or registered mail. Plaintiff relies upon the assertion by her attorney that the complaint was, in fact, mailed on March 21, 1989. This assertion is insufficient to interrupt the running of prescription. Further, the mere receipt of courtesy copies of the complaint by the defendants did not interrupt the running of prescription.
The facts of this case are analogous to cases in which petitions in lawsuits are mailed to the clerk of the appropriate district court. The jurisprudence holds that a suit is filed when the petition is timely placed in the hands of the clerk of a court of competent jurisdiction for filing. Mailing the petition to the clerk does not equate to filing. Dubois v. Olympic Insurance Company, 231 So.2d 714 (La.App. 1st Cir.1970), writ denied 255 La. 916, 233 So.2d 564 (1970). The plaintiff must prove that the petition was placed in the hands of the clerk for filing by a preponderance of the evidence. The court in Dubois stated, "if we were to hold otherwise, we should have to hold that the mailing of the suit to the Clerk is sufficient to interrupt prescription, and that is not the law of this state." The court went on to state:
The plaintiff chose the means of transmitting his suit to the Clerk. He could have easily protected himself against nonarrival of suit, or the loss thereof by the Clerk, after receipt by the simple expedient of certifying or registering the letter. He must assume the responsibility for its nonarrival, in the absence of proof that it was received by the Clerk.
In Jones v. Forest Oil Company, 663 F.2d 556 (5th Cir.1981), the court stated:
The fact that the instant complaint was mailed to the clerk several days prior to the accrual of the statute of limitations period does not alter the relevant inquiry. The crucial question is whether the pleading was put into the physical possession of the clerk within one year of Jones' injury. In this case, the clerk did not timely receive the complaint.... Accordingly, we are compelled to conclude that the filing was unseasonable.
See also Hayes v. Woodworth Trucking Company, 353 So.2d 478 (La.App. 3rd Cir. 1977).
Similarly, we find in the present case that the plaintiff could have protected herself by the "simple expedient of certifying or registering the letter." LSA-R.S. 40:1299.47(A)(2)(b).
*1374 We further note that LSA-R.S. 40:1299.47(A)(3) provides:
(3) It shall be the duty of the board within fifteen days of the receipt of the claim to:
(a) Confirm to the claimant that the filing has been officially received and whether or not the named defendant or defendants have qualified under this Part.
(b) Notify all named defendants, whether or not qualified under the provisions of this Part, that a filing has been made against them and request made for the formation of a medical review panel; and forward a copy of the proposed complaint to each named defendant at his last and usual place of residence or his office.
(c) Forward a copy of the proposed complaint to the clerk of the Louisiana Supreme Court, including the names of the parties plaintiff and defendant, who are qualified under this Part. [Emphasis supplied.]
If the plaintiff had, in fact, mailed a complaint to the Commissioner of Insurance for filing, she would have received notice within 15 days that the claim had been received and filed. Failure to receive such notice should have alerted the plaintiff that the mailing had not been received by the Commissioner's office. At such point in time, the plaintiff still had time to file the complaint and thereby interrupt the running of prescription.
The duty rested with the plaintiff to timely file her complaint with the Commissioner of Insurance. She failed to fulfill that duty and failed to protect her own interests by sending her complaint by certified, registered mail and by failing to note whether, within fifteen (15) days, receipt of her complaint was acknowledged.
Based upon this record, there is no showing that the plaintiff's complaint was filed before June 6, 1989. Therefore, the plaintiff's argument that her claim was filed in March, 1989 and was then lost by the Commissioner of Insurance is without merit. Further, because prescription on the plaintiff's medical malpractice claim began to run, at the latest, on April 30, 1988, the filing of her complaint on June 6, 1989 was not timely.[3]

EQUITABLE ESTOPPEL
The plaintiff contends that the doctrine of equitable estoppel is applicable in this case. She argues that the doctrine should be used to bar the defendants' exception of prescription because LAMMICO was aware in March, 1989, that it had received the original complaint intended to be filed with the office of the Commissioner of Insurance, but did not reveal that information to the plaintiff's attorney or the court until approximately one and one-half years "after said filing and prescription had run." This argument is meritless.
Equitable estoppel has been defined as the effect of voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Pittman v. Pomeroy, 552 So.2d 983 (La. App. 2d Cir.1989); Bellsouth Advertising and Publishing Corporation v. Gassenberger, 565 So.2d 1093 (La.App. 4th Cir. 1990).
The doctrine is based on equitable considerations of good faith and is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations or silence. Pittman v. Pomeroy, supra; Spataro v. Department of Public Safety and Corrections, 577 So.2d 795 (La.App. 2d Cir.1991).
Estoppel is not favored by Louisiana courts. It is invoked sparingly because *1375 it acts to bar the normal assertion of rights. Spataro v. Department of Public Safety and Corrections, supra. Any party seeking to invoke estoppel must specifically plead and prove the factual elements of the doctrine. Pittman v. Pomeroy, supra; Robbins Tire and Rubber v. Winnfield Retread, 577 So.2d 1189 (La.App. 2d Cir.1991).
Three requirements must be met in order for equitable estoppel to be applied: (1) a representation by conduct or word by the person sought to be estopped; (2) justifiable reliance thereon; and, (3) a change in position because of that reliance to the detriment of the party asserting estoppel. Bellsouth Advertising and Publishing Corporation v. Gassenberger, supra.
One indispensable element of estoppel to plead prescription is deceit. Victor v. Meydrich's Venice Gardens Super Market, 344 So.2d 56 (La.App. 4th Cir. 1977), writ denied, 346 So.2d 217 (La.1977).
If the evidence reveals that the asserting party had actual knowledge, or a ready and convenient means of determining the facts concerning representations made, equitable estoppel will not lie. Robbins Tire and Rubber v. Winnfield Retread, supra; KPW Associates v. S.S. Kresge Company, 535 So.2d 1173 (La.App. 2d Cir. 1988), writ denied, 537 So.2d 1167 (La. 1989).
In the present case, equitable estoppel does not serve as a bar to the defendants' exception of prescription. The plaintiff essentially claims that, because LAMMICO received the original copy of the complaint, it knew that the complaint had not been filed with the Commissioner of Insurance and withheld that information until after prescription had run. The plaintiff claims that by LAMMICO's silence, it represented that the claim had been timely filed. The plaintiff further asserts that she justifiably relied upon LAMMICO's representation. These claims are meritless.
The trial court found that the defendants did not attempt to deceive the plaintiff or engage in any fraudulent conduct which would invoke the doctrine of equitable estoppel. This finding is not clearly wrong and is supported by the record. There is no showing that the actions of LAMMICO were undertaken with a deceitful purpose to defeat the plaintiff's claim. It was the plaintiff who sent the original documents to LAMMICO. Further, it was also the plaintiff who failed to insure that the claim was properly filed by sending it by certified mail. Additionally, the plaintiff failed to check with the office of the Commissioner of Insurance when no notice of receipt of the complaint was sent by that office. The facts concerning the "representation" were easily discoverable by the plaintiff, but she failed to do so. Therefore, the doctrine of equitable estoppel is not applicable in this case.

UNJUST ENRICHMENT
The plaintiff argues that the doctrine of unjust enrichment should be applied to bar the defendants from asserting their exception of prescription. This argument is also meritless.
Generally, the doctrine of unjust enrichment involves the concept of indemnity which is quasi contractual. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). Unjust enrichment or quantum meruit, is an equitable doctrine based upon the principle that one who benefits from another's labor and materials should not be unjustly enriched thereby. Wilkins v. Hogan Drilling Company, Inc., 471 So.2d 863 (La.App. 2d Cir.1985).
Five requirements are necessary for the doctrine to be applicable: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and impoverishment; (4) absence of justification for the enrichment and impoverishment; and, (5) absence of a remedy provided by a law. Carter v. Flanagan, 455 So.2d 689 (La.App. 2d Cir.1984); Abbeville Lumber Company v. Richard, 350 So.2d 1292 (La. App. 3rd Cir.1977).
In the present case, although we do not specifically find an enrichment or impoverishment or a connection between *1376 the two, we note that if such did occur, it occurred due to the actions of the plaintiff in failing to timely file her complaint, and not by any unjustified action by the defendants. Therefore, the doctrine of unjust enrichment does not apply to this case.

CONCLUSION
For the reasons stated above, we affirm the trial court judgment sustaining the defendants' exception of prescription. Costs in this court and in the court below are assessed to the plaintiff.
AFFIRMED.

APPLICATION FOR REHEARING
Beforer MARVIN, SEXTON, LINDSAY, VICTORY and WILLIAMS, JJ.
Rehearing denied.
NOTES
[1] Eventually, plaintiff dismissed her claim against Dr. Blell. The plaintiff settled with Minden Medical Center.
[2] Because the complaint was mailed by certified mail, return receipt requested, it is deemed filed on June 6, 1989, the date of mailing, pursuant to LSA-R.S. 40:1299.47(A)(2)(b).
[3] We further note that the plaintiff's action in conveying to LAMMICO, a defendant in the suit, the original complaint and a cover letter addressed to the Commissioner of Insurance, requesting filing, had no effect. Conveying an original of a complaint to the opposing party is not analogous to filing with the incorrect governmental entity. See and compare Hough v. Brookshire Grocery Company d/b/a Super One, 618 So.2d 587 (La.App. 2d Cir.1993), which is clearly distinguishable from the facts of the instant case.