liPRICE, Judge Pro Tem.
In this oil and gas litigation, two consolidated appeals have been taken from two summary judgments dismissing the claims of the State of Louisiana and Vector Investments (the State) against Franks Petroleum, Inc., John Franks, Fred Plitt, A. Thomas Dickerson, Randal Lewis, Williams Jarrett and Hersehel Downs (the Franks defendants). Although the plaintiffs’ petition named numerous defendants and raised questions concerning the navigability of Bayou D’Arbonne and the proper payment of mineral production revenues attributable to the bed of Bayou D’Arbonne, the more narrow issue presented here is whether or not there is any genuine issue of material fact concerning the state’s ability to pursue a legal remedy against the Franks defendants. For the reasons which follow, we affirm the granting of summary judgment against the State.
FACTS
In 1974, Mr. E.R. Musgrave sent a letter on behalf of Franks Petroleum, Inc. to the Louisiana State Land Office with reference to Bayou D’Arbonne and certain sections of land in Lincoln Parish, Louisiana. The body of the letter stated:
I am interested in determining if the Bayou D’Arbonne crosses any or all of the above captioned sections and if so was it navigable in 1812 such that the minerals under the bed of the bayou would be owned by the State of Louisiana. I noticed that the main body of the Bayou D’Arbonne does not seem to pass through these sections though it would appear that tributaries or branches do. I do need to confirm this and if it should be found that it in any instance is owned by the state then I need to determine if at all possible the acreage content of the state ownership in each section above captioned. Your assistance in this matter and an early reply will be sincerely appreciated.
The State Land Office sent a responsive letter several days later, the body of which stated:
With reference to your letter of October 1, according to the official plat of T. 20 N., R. 2 W., Louisiana Meridian, Bayou Dar-bonne runs through the north half of Sections 26 and 27 according to this plat. This stream was not traversed.
|2The N!é of the NW% and the NWJ4 of the NEÍ4 of Section 26 and the N& of Section 27 were approved to the State in full acreage and patented by the State in full acreage and SWJi of the NEJ4 of Section 27 was entered from the State by B.R. and Bobbie Babin Davidson on September 28, 1957, minerals reserved to the State.
The affidavit of E.R. Musgrave, submitted in support of the motion for summary judgment, states that if the State had advised him in 1974 that it considered Bayou D’Arbonne to have been navigable in 1812, Musgrave, on behalf of Franks, would have either obtained a lease from the State or investigated the State’s claim of ownership further before allowing drilling operations to begin.
Oil and gas leases subsequently were obtained from the State covering the acreage the State identified as owning, and oil and gas leases that covered the beds and bottoms of Little Bayou D’Arbonne were obtained from Lincoln Parish landowners. Drilling permits then were obtained from the State, and several of the wells drilled pursuant to those permits were successful. The Louisiana Office of Conservation issued orders covering the sections in question, and established drilling and production units there.
Seventeen years after the State’s letter to Franks Petroleum, the State granted mineral leases to Vector Investments covering the beds and bottoms of all navigable water bodies in the areas in question. The leases provided that the State would receive a 27 per cent royalty on production and that the leases were made without any warranty of title so that the State would not have to return any monies it received under the leases.
*721 On June 8,1992, some 16 months after the State granted the leases to Vector, the State and Vector filed suit against the Franks defendants and others. At that time, the individual Franks defendants no longer were mineral lessees in the subject properties, having assigned their interest in the pertinent leases to Sonat Exploration Rin 1989. Similarly, Franks Petroleum, Inc., relinquished its position of operator of the wells in question to Sonat in 1989. Thus, the Franks defendants’ only interest in the litigation concerned the plaintiffs’ claims for monetary damages equal to the revenues received by defendants from the sale of production from the date of earliest production. The plaintiffs also sought a judgment declaring the pertinent portions of Bayou D’Ar-bonne to be a navigable stream from the year 1812 to the present, declaring the bed of Bayou D’Arbonne to be owned by the State, declaring the validity of the Vector leases, and declaring the invalidity of other leases encompassing the relevant areas.
For nearly two years, the parties engaged in a process of filing motions, exceptions, and amendments to the original petition. Eventually, on August 25, 1994, the district court denied the Franks defendants’ second motion for summary judgment because, in the trial court’s opinion, there existed a genuine issue of material fact as to whether or not Bayou D’Arbonne was navigable in 1812. However, because the motion for summary judgment was based on the Franks defendants’ position that even if Bayou D’Arbonne was navigable, the plaintiffs had no claim against them, the Franks defendants asked the court to reconsider its position and assume that Bayou D’Arbonne was navigable in 1812. Subsequently, on December 1, 1994, the district court reversed its position, granted the Franks defendants’ motion for summary judgment, and entered judgment dismissing the Franks defendants from the lawsuit.
The trial court issued a written opinion explaining the granting of summary judgment. Essentially, the court held that the Franks defendants did not owe the plaintiffs an accounting[1] because in order to be enti-tied to an accounting, there must exist a relationship between the plaintiffs and Franks defendants that imposes a legal ^obligation to account. The district court stated that such a relationship could result either from a contract or a statute. However, there was no contract between the plaintiffs and the Franks defendants, and the court further found no statute to impose a duty to account on the Franks defendants. The court rejected the plaintiffs’ argument concerning the applicability of LSA-C.C. art. 488 and LSA-R.S. 30:10(A)(3) as a basis for the imposition of a duty to account. The court also stated:
A landowner has causes of action that protect him when an oil and gas lease has been wrongfully executed over his property and drilling operations have been commenced. Here, not only did the State of Louisiana know about the drilling operations, it approved of such and acquiesced in same for a great length of time. Noteworthy is a comment made by learned counsel for plaintiffs in oral argument that this action of accounting would in effect exist without limit. If that were the ease, drilling, commerce and development would at best be stifled and in some instances thwarted. An interminable possibility of such a requirement was not contemplated in the cited provisions nor in any other authority of which this court is aware. The State’s deficiency in protecting any interest in [sic] might have had sometime ago cannot form the basis for the creation of a claim against the good faith defendants for an illusory action of “an accounting.”
DISCUSSION
The appellants have raised numerous issues on appeal. Vector Investments has briefed the following issues:
1. Is mineral production revenue, in the possessory context, properly classified as a product under C.C. art. 488 or a fruit under C.C. art. 486?
*722 2. Are Appellees, as mineral lessees, possessors within the context of C.C. art. 488?
8. Have the Appellants stated a valid cause of action against Appellee, FRANKS PETROLEUM, INC., under La.R.S. 30:10(A)(3)?
4.' Assuming the STATE owns the bed of Bayou D’Arbonne, were any leases granted by persons purporting to own the bed of Bayou D’Arbonne valid and legally enforceable?
|e5. Assuming the STATE owns the bed of Bayou D’Arbonne, was the bed of Bayou D’Arbonne “leased” within the contemplation of La.R.S. 30:10(A)(3) while FRANKS PETROLEUM, INC. was operator of the units in question?
6. Assuming the STATE owns the bed of Bayou D’Arbonne, do the Appellees owe the STATE and VECTOR an accounting for all mineral production revenue attributable to the bed of Bayou D’Arbonne?
7. Did the Appellees offer any evidence or proof of their status as good faith possessors?
8. Have the Appellees established that there are no genuine issues of material fact regarding their alleged status as good faith possessors?
The two issues presented for review in the State’s brief are:
1. Is the decision in Succession of Doll v. Doll, 593 So.2d 1239 (La.1992) controlling with regard to the claim of the State of Louisiana as an unleased interest owner against the Franks Defendants, working interest owners and operators of the units?
2. Are the Provisions of Title 30, Minerals, Oil and Gas, R.S. 30:1, et seq. and Title 31, Louisiana Mineral Code, applicable to the issue of ownership of oil and gas production in a Commissioners Unit?
After reviewing the record and the arguments of counsel, we conclude that the controlling issue in this litigation is one not listed by either appellant: assuming the navigability of Bayou D’Arbonne, and assuming the existence of a duty to account, are the appellants equitably estopped from obtaining an accounting based on the State’s prior representations and silence for nearly 20 years? We answer this question in the affirmative.
Although the issue of estoppel was raised by appellees, both in the trial court and on appeal, Vector argues that estoppel is not an issue in this appeal. The basis for Vector’s argument is the trial court’s original opinion denying summary judgment. In discussing the issue of the navigability of Little Bayou D’Arbonne in relation to the request for summary judgment, the court found a factual issue existed, |fiand further commented that the submission of the estoppel issue was “tantamount to an admission that summary judgment is inappropriate as estop-pel is a factually intensive issue, one that cannot be resolved without a fact finding trial.” Vector now asserts that because the trial court’s finding was not the subject of an answer to this appeal, the issue of estoppel is not properly before this court. The State adds in its appellate brief that the issue of equitable estoppel was not a basis for the later decision of the district court granting summary judgment.
Despite the appellants’ protestations, we find the issue of estoppel is properly before this court. In the first place, an appeal is from the judgment, not the reasons for judgment. Wade v. Wade, 25,942 (La.App.2d Cir. 8/17/94), 641 So.2d 989; Edwards v. K & B, Inc., 26,002 (La.App.2d Cir. 8/17/94), 641 So.2d 1040. The judgment at issue here is one granting summary judgment in favor of appellees, and our task is to determine whether this result is correct, regardless of what reasons the trial court may have relied upon in reaching the result, although we note that the previously quoted portion of the trial court’s opinion granting summary judgment certainly indicates that the trial court took certain equitable factors into account. Furthermore, there was no need for appellees to file an answer to this appeal in order to address the issue of estop-pel. The trial court’s remarks concerning estoppel were in an opinion, not a judgment, and were in an opinion supporting an interlocutory judgment that is not before this court due to the fact that it was set aside when the trial court realized it was wrong. Finally, we would note that Vector’s argu *723 ment is in direct conflict with the provisions of LSA-C.C.P. art. 2138 which state that an appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part, or unless he demands -damages against the appellant. Here the appellees do not wish to have the judgment modified, |?revised, or reversed, but instead seek to have the judgment affirmed. The article goes on to state that a party who does not seek modification, revision, or reversal of a judgment in an appellate court may assert in support of the judgment any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs. We now turn to the merits of estop-pel.
The doctrine of equitable estoppel is based upon good faith and is designed to prevent any injustice by barring a party from taking a position contrary to its prior acts, admissions, representations or silence. Spataro v. Department of Public Safety and Corrections, Office of Motor Vehicles, 577 So.2d 795 (La.App.2d Cir.1991). With respect to inaction as a basis for estoppel, the supreme court in Sun Oil Company v. Roger, 239 La. 379, 118 So.2d 446 (1960) quoted approvingly the court’s philosophy as announced in Lafitte, Dufilho & Company v. Godchaux, 35 La.Ann. 1161:
The genius of our law does not favor the claims of those who have long slept on their rights and who, after years of inertia, conveying an assurance of acquiescence in a given state of things, suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid of the courts for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement.
Whether grounded in a party’s prior acts, admissions, representations or silence, estoppel is found only when the following elements are proven: (1) a representation by conduct or words; (2) a justifiable reliance; and (3) a change in position to one’s detriment because of the reliance. Spataro, supra. It is well settled that the doctrine of estoppel applies to the State just as it does to individuals. State v. Register of State Land Office, 193 La. 883, 192 So. 519 (1939). Thus, in State v. Texas Co., 211 La. 326, 30 So.2d 107 (1947), where the State while acting in its proprietary capacity in leasing certain public lands for the extraction of oil made an error in the description of the lands covered by the lease as a result of the fact that a boundary between two | sparishes had never been surveyed, and a certain section of land had been treated by parochial authorities and owners as lying wholly within one of the parishes, the State was estopped from later asserting that land in the area at issue was not included in the lease.
Although the supreme court in Texas Co. found it unnecessary to discuss at length the defendants’ plea of estoppel, it is obvious from a review of the facts that the State had represented to the oil company that the lease for which the company bid included Bay De-Chene, also known as “Hackberry Bay.” The oil company had relied upon that representation in bidding for the lease and had complied with all the terms and conditions of the lease, and the oil company’s reliance was justifiable.
Similarly, in Daigle Brothers Sand and Dirt, Inc. v. Department of Revenue and Taxation, 594 So.2d 935 (La.App. 3d Cir.1992), the Department of Revenue and Taxation was estopped from collecting tax on sales of dirt and sand where a certified public accountant with the department had represented to the seller that no tax was due, the seller was justified in relying on the representations, and many buyers were no longer in business, thereby making recoupment of tax by the seller impossible. We also note that the appellate court concluded that the trial court had correctly found it was unnecessary to rule on the question of whether the sand and dirt sold in that ease was taxable as tangible personal property. Instead, the question was whether the three elements of equitable estoppel applied. See also First Municipal Leasing Corporation v. State, 422 So.2d 1182 (La.App. 1st Cir.1982).
As in Daigle Brothers, supra, the question in the ease at bar is the applicability of the elements of equitable estoppel. It is *724 not necessary for us to determine either the navigability of Bayou D’Arbonne or the existence of a right in the State to an accounting from appellees. Furthermore, we are very much aware that summary | ¡judgment procedure should be used cautiously and sparingly, and that summary judgment is not a substitute for trial on the merits. Yocum v. City of Minden, 566 So.2d 1082 (La.App. 2d Cir.1990). Nevertheless, a partial summary judgment can be based upon the application of estoppel where the pertinent facts concerning the three elements of estoppel are not in dispute.
By Act 150 of 1962, the legislature required the Register of State Lands to prepare and maintain in the State Land Office at all times and make available as a public record, a listing showing the lands and improvements thereon and all royalty and/or mineral rights belonging to or under the control of the state, whether or not held directly in the name of the State or in the name of any board, commission, department or agency. The act further required the listing to clearly describe the land owned, leased or rented, and show its location, acreage or other area, any improvements thereon, the date of acquisition and the value thereof, and such other information with regard thereto as might be required by the rules and regulations of the Register of State Lands. See now LSA-R.S. 41:13.
The foregoing statutory authority shows that the actions of Franks Petroleum in contacting the State Land Office were reasonable as an effort to determine whether or not the State claimed ownership of the acreage at issue. Moreover, the letter from Franks Petroleum to the State Land Office is very clear in its request. The letter plainly states the purpose of determining whether the minerals under the bed of the bayou would be owned by the State of Louisiana, and further states the need to determine the acreage content of the State ownership in each of the identified sections. Thus, there can be no doubt that the State Land Office was properly apprised of the purpose of the letter and the specific information requested.
| ipThe reply letter of the State Land Office plainly states that the official plat of Township 20 N., range 2 W. shows Bayou D’Ar-bonne running through the north half of Sections 26 and 27, and that the steam was not traversed. The letter then goes on to inform Franks Petroleum of the acreage in Sections 26 and 27 approved to the State in full acreage and patented by the State in full acreage. The letter concludes by identifying certain acreage in Section 27 that was entered from the State by certain named individuals, minerals reserved to the State.
We conclude that by being made aware of the clear purpose of the Franks Petroleum letter, as well as the information requested therein, the response of the State Land Office was a representation to Franks Petroleum of the acreage content of State ownership in the Sections at issue, notwithstanding the additional statement that the stream was not “traversed.” Certainly, this statement, standing alone, does not indicate any claim of ownership by the State, and the opposite is indicated by the specific listing of acreage claimed by the State. Enumerado unius est exclusio alterius: the specification of one thing is the exclusion of another.
Additionally, we conclude that Franks Petroleum was reasonable in relying upon the representation of the State Land Office. The State Land Office was the governmental entity charged with the responsibility of making available as a public record a listing of state lands, as well as all royalty and mineral rights belonging to or under the control of the State, and the information supplied to Franks Petroleum by the State Land Office was in direct response to Franks Petroleum’s clear request for the acreage content of the State ownership in the sections identified in the Franks Petroleum letter.
Finally, there can be no doubt that the oil and gas exploration by the Franks defendants in the area at issue resulted from the State’s representations. Not only Inwere leases obtained from the State on the lands identified as owned by the State, but leases also were obtained from the riparian owners as well. Furthermore, money was expended on drilling operations to explore for minerals, and as previously noted, the affidavit of Mr. E.R. Musgrave specifically stated that if the *725 State had not advised as it did, he, on behalf of Pranks Petroleum, would have either obtained a lease from the State or investigated the State’s claim of ownership further before allowing drilling operations to begin. Accordingly, the detrimental nature of the reliance is obvious. In addition to expending substantial sums of money on the uncertain proposition of discovering minerals, the ap-pellees now are faced with the much costlier prospect of owing an “accounting” that would result in their owing large sums of money for the production obtained over these many years. Such an unjust result cannot be tolerated under principles of equity.
Although the representations and reliance discussed above are sufficient to satisfy the elements of estoppel for purposes of partial summary judgment, we also are impressed, as was the trial court, with the great length of time that has elapsed from the commencement of drilling operations, during which the State granted drilling permits and established drilling and production units, but gave no indication of any claim to ownership of lands or mineral rights.
CONCLUSION
For the reasons set forth above, we conclude that appellants are estopped from seeking a recovery against appellees. Accordingly, we affirm the trial court’s granting of partial summary judgment. Costs shall be paid by Vector Investments.
AFFIRMED.
APPLICATION FOR REHEARING
Before MARVIN, WILLIAMS, STEWART, JJ., CLARK and PRICE, JJ. Pro Tem.
Rehearing denied.

. The plaintiffs’ claim for an accounting was added by amendment, and encompasses the previously mentioned claim for monetary damages.