NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-891

JOE MANISCALCO, JR.

VERSUS

LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2007-0714
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

ELIZABETH A. PICKETT
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED.

Michael Wayne Adley
Judice and Adley
P. O. Drawer 51769
Lafayette, LA 70505-1769
(337) 235-2405
COUNSEL FOR DEFENDANT/APPELLANT:
Lafayette City-Parish Consolidated Government

Daniel M. Landry  III
P. O. Box 3784
Lafayette, LA 70502
(337) 237-7135
COUNSEL FOR PLAINTIFF/APPELLEE:
Joe Maniscalco, Jr.

**PICKETT, Judge.**

Employer appeals judgment ordering it to reinstate retired employee's health insurance coverage as of the date of the employee's retirement. We affirm.

**FACTS**

On February 10, 2006, Joe Maniscalco, Jr. retired after twenty-eight years of employment with Lafayette City–Parish Consolidated Government (LCG). Prior to his retirement, on January 18, 2006, he notified LCG of his intent to retire on February 10, 2006. During his employment, Mr. Maniscalco was insured under LCG's Employee Health Benefit Plan (Plan). Pursuant to the terms of the Plan, he was eligible to continue his insurance coverage upon retirement.

The Plan (emphasis added) provided in pertinent part:

2.   *Retiree coverage must be requested in writing on a form furnished by the Plan.* Coverage will become effective the date you are eligible for retirement, *if such request is made on or before that date.*

3.   *If retiring employees do not request a continuation* of coverage for themselves *on or before their retirement date, they will be barred forever* from obtaining coverage for themselves or their dependents under this Plan.

Mr. Maniscalco notified LCG's Human Resources Department (HR) of his intent to retire by submitting a personnel action request. He testified that after submitting the request, he spoke with an HR representative and made it known to her that he intended to maintain his insurance coverage after he retired. He related that he was told by the administrator that if he did not sign certain forms by the date he retired, he could risk a delay in receipt of his benefits and that he had to schedule an appointment with HR before the effective date of his retirement if he did not want a delay in receipt of his benefits. Mr. Maniscalco further testified that two HR

representatives told him he would go to the Group Insurance Department (GI) after he signed the necessary paperwork in HR. Mr. Maniscalco scheduled an appointment with HR before his retirement but did not keep it. He admitted that he had a copy of the Plan, but he never reviewed it.

Mr. Maniscalco also testified that prior to his retirement, he spoke to a GI representative and advised her that he was going to continue his individual insurance coverage after retiring but not dependent coverage and asked on what date his dependent coverage would cease. According to Mr. Maniscalco, the representative did not have the requested information and told him she would get back to him after she obtained it.

The GI representative did not call Mr. Maniscalco back as expected, and his wife called the representative to obtain the requested information. Mrs. Maniscalco testified that the GI representative did not tell her that Mr. Maniscalco had to take action to maintain his insurance coverage after retirement, that he had to go to GI to take that action, or that he would not have insurance coverage after he retired if he did not go in to the GI office and take the required action. She also admitted that she never reviewed the Plan.

LCG's HR administrator agreed that she never informed Mr. Maniscalco that he had to go to GI or he would not have insurance coverage after he retired, explaining that she did not do so because he never met with her to elect his retirement benefits. Moreover, she admitted that she did inform him that he may have a delay in receiving benefits but never informed him that he would lose his insurance coverage if he did not complete the GI form before he retired.

2

LCG's HR manager testified that the HR administrator told him Mr. Maniscalco did not attend the appointment he scheduled with her and that he emailed Mr. Maniscalco on February 3, 2006, advising:

> You have not completed your paperwork in Human Resources relative to your upcoming retirement. Any delay in you attending to these matters may impact the timeliness of you receiving retirement benefits[,] and you also need to make arrangements with group insurance prior to the effective date of your retirement if you plan on receiving group insurance benefits from LCG.

Mr. Maniscalco testified, however, that he did not recall seeing the email when it was sent but did remember seeing it after he retired when it was provided to him by HR in response to a request.

Mr. Maniscalco received written notification dated March 6, 2006, from LCG that his insurance coverage had ceased because he had not applied for medical and life insurance coverage prior to his last day of employment as required. He then filed a Petition for Declaratory Judgment, asking that LCG be ordered to reinstate his insurance coverage retroactive to the date of his retirement. After a trial on May 17, 2010, the trial court rendered judgment in Mr. Maniscalco's favor, ordering LCG to reinstate insurance coverage for him as requested. LCG appealed.

## ASSIGNMENTS OF ERROR

LCG's appeal presents three issues for our review:

1) Did the trial court err when it entered judgment against LCG on the theory of detrimental reliance/estoppel?

2) Did the trial court err when it found provisions of the Employee Health Benefit Plan were ambiguous and that Mr. Maniscalco could have read the Plan to mean that a form would be sent to him for completion?

3) Was there a written representation that Mr. Maniscalco relied upon to his detriment?

3

*Detrimental Reliance*

LCG first asserts that the trial court erred in awarding judgment in favor of Mr. Maniscalco because he plead, but did not satisfy the proof requirements of, detrimental reliance/equitable estoppel. Specifically, LCG contends that Mr. Maniscalco failed to prove sufficient facts for the doctrine of detrimental reliance/equitable estoppel to apply. It points to the allegation in his Petition that he is entitled to recover under this doctrine "based upon the written representation and his justifiable reliance that LCG would . . . provide the form furnished by the plan" and to the fact that he failed to introduce a written representation by LCG to him as support for this contention.

LCG relies upon *Knippers v. Lambard*, 620 So.2d 1368, 1375 (La.App. 2 Cir.), *writ denied*, 629 So.2d 1169 (La.1993), where the court held, "Any party seeking to invoke estoppel must specifically plead and prove the factual elements of the doctrine." It argues that because Mr. Maniscalco testified he did not read the Plan, he cannot claim he relied upon it to his detriment. We have reviewed the trial court's Reasons for Ruling and the Judgment itself; neither indicate the trial court awarded judgment in Mr. Maniscalco's favor on the basis of detrimental reliance/equitable estoppel. Accordingly, this assignment of error need not be addressed. The same is true of LCG's last assignment of error which is also couched in terms of detrimental reliance.

*Ambiguity of the Plan*

LCG next argues that the trial court erred in agreeing with Mr. Maniscalco that the previously quoted provision of the Plan is ambiguous. The trial court found it

could be read to mean that after Mr. Maniscalco notified LCG of his intent to continue his insurance coverage after retiring, it would forward the required form to him. This finding presents a question of law, *Sims v. Mulhearn Funeral Home, Inc.*, 07-54 (La. 5/22/07), 956 So.2d 583, which requires this court to determine whether the trial court's conclusion was correct. *Forum for Equality PAC v. McKeithen*, 04-2477 (La. 1/19/05), 893 So.2d 715.

This court reviewed the general rules of contract interpretation in *CLK Company, L.L.C. v. CXY Energy, Inc.,* 07-834, pp. 8-10 (La.App. 3 Cir. 12/19/07), 972 So.2d 1280, 1287, *writs denied*, 08-140, 08-207 (La. 3/14/08), 977 So.2d 932, 937, stated:

> The goal of contract interpretation is to determine "the common intent of the parties." La.Civ.Code art. 2045. The intent of the parties to a contract must be determined in accordance with "the plain, ordinary, and popular sense of the language used in the agreement and by giving consideration on a practical basis to the instrument in its entirety." *Fleniken v. Entergy Corp.*, 99-3023, 99-3024, p. 6 (La.App. 1 Cir. 2/16/01), 790 So.2d 64, 68, *writs denied*, 01-1269, 01-1295 (La.6/15/01), 793 So.2d 1250, 1252. When the words of a contract are clear, explicit, and lead to no absurd consequences, the contract must be interpreted within its four corners and cannot be explained or contradicted by parol evidence. La.Civ.Code art. 1848; *Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So.2d 1024. However, when a word in a contract is not clear, testimony or other evidence may be considered to determine the parties' intent and interpret the contract. *Blackburn v. Nat'l Fire Ins. Co. of Pittsburgh*, 00-2668 (La. 4/3/01), 784 So.2d 637. . . .

> "The words of a contract must be given their generally prevailing meaning," and "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter." La.Civ.Code art. 2047. Additionally, "[w]ords susceptible of different meanings must be interpreted as having the meaning that conforms to the object of the contract." La.Civ.Code art. 2048. Pursuant to La.Civ.Code art. 2049, a "provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."

The Plan provides that an employee planning to retire must request continued insurance coverage on a form furnished by it. It does not, however, tell the employee how he is to obtain the form. For this reason, we find no error with the trial court's determination that the Plan was ambiguous.

LCG assigns error with the trial court's acceptance of Mr. Maniscalco's argument that the Plan's notice of intent provision concerning health coverage after retirement is ambiguous and can be read to mean that upon providing notice of intent to continue said coverage, the proper form would be forwarded to the employee for completion. It urges the argument is without merit because Mr. Maniscalco testified that he never expected GI to mail the form to him. As explained by the trial court, any ambiguity in a contract must be construed against the drafter. La.Civ.Code art. 2056.[1] Furthermore, a contract must be interpreted in favor of the complaining party if the ambiguity or doubt in the meaning of the contract results from the other party's negligence or failure to provide an explanation that should have been given. La.Civ.Code art. 2057.[2] This is the situation presented here. Accordingly, the trial court did not err in interpreting the Plan in Mr. Maniscalco's favor.

---

[1]Louisiana Civil Code Article 2056 provides:

> In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.

> A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.

[2]Louisiana Civil Code Article 2057 provides:

> In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation.

> Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor.

LCG also argues that insurance coverage is handled by GI, not HR; therefore, Mr. Maniscalco's reliance on HR employees' representations contrary to the Plan is misplaced. We disagree. Mr. Maniscalco testified that the retirement process is handled by HR and that he considered HR as the "point person" for GI in the process. Although the LCG employees' testimony contradicts Mr. Maniscalco's understanding of the process, the evidence shows he was informed by two HR employees that he would proceed to GI *after* he completed the necessary forms in HR and that his "benefits" would merely be delayed if he did not complete the required retirement paperwork prior to his retirement. This evidence, coupled with the fact that the GI employee with whom he and his wife discussed continuing his insurance coverage did not inform him that he needed to obtain and complete the required form from GI before he retired, establishes that Mr. Maniscalco's reliance on the HR representatives' instructions and the failure of the GI representative to provide him guidance, as well as his understanding of the process, was reasonable.

### DISPOSITION

The judgment of the trial court is affirmed. All costs are assessed to Lafayette City-Parish Consolidated Government.

**AFFIRMED.**

**This opinion is NOT DESIGNATED FOR PUBLICATION.**
**Uniform Rulies–Courts of Appeal, Rule 2-16.3.**