Dear Mayor Costin:
We are in receipt of your correspondence to this office raising three questions for our review pertaining to the elected chief of police of the Town of Eros, a Lawrason Act municipality.
In response to your first question, R.S. 33:404.1 compels the board of aldermen to fix by ordinance the compensation of an elected chief of police.[1] This office has frequently determined that the payment of health insurance premiums constitutes a related benefit and/or "compensation" under R.S. 33:404.1. See attached Attorney General Opinion 99-185, and discussion therein.
In response to your second question, an elected chief of police is an autonomous public official. While R.S. 33:404 grants the mayor certain powers, those powers do not include the authority to supervise an elected chief of police. R.S. 33:404 pertinently provides:
§ 404. Duties of the mayor
 The mayor shall have the following powers, duties, and responsibilities:
 (1) To supervise and direct the administration and operation of all municipal departments offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law; however, no such ordinance may limit the authority granted to the mayor by this Paragraph. All administrative staff shall be subordinate to the mayor.
* * * * *
 (3) Subject to applicable sate law, ordinances, and civil service rules and regulations, to appoint and remove municipal employees, other than the employees of the police department with an elected chief of police. However, appointment or removal of a non-elected chief of police, the municipal clerk, the municipal attorney, or any department head shall be subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the mayor shall prevail. Furthermore, selection or removal of any person engaged by a municipality to conduct an examination, review, compilation, or audit of its books and accounts pursuant to R.S. 24:517
shall be subject to approval by the board of aldermen of that municipality.
* * * * *
 B. The provisions of this Section shall not be construed to alter, affect, or amend any powers, duties and functions of any elected chief of police as set forth in R.S. 33:423, R.S. 33:423.2, and R.S. 33:423.3. (Emphasis added).
The chief of police has the general responsibility for law enforcement pursuant to R.S. 33:423:
§ 423. Duties of marshal
 A. The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of this Part, R.S. 33:321 et seq., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and the board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel. Such nominations or recommendations are to be made regardless of race, color, disability, as defined in R.S. 51:2232 (11) or creed.
 B. The provisions of Subsection A of this Section shall not be construed to limit or restrict the provisions of R.S. 33:423.3.
Note also the mayor does not have the authority to control the expenditures of the police department. The chief of police has the inherent authority to control or administer the day-to-day operations of the police department. This inherent authority includes the authority to control and administer police department property and personnel. Once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. See McCaig vs. Town of Gueydan,788 So.2d 1283 (La.App. 3rd Cir. 2001) at page 1285 (citations omitted).
In response to your third question, the governing authority may not dictate the patrol hours of the chief of police, as this action constitutes an infringement upon the chief's powers to manage the affairs of his office. See Attorney General Opinion 81-251, copy attached.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
[1] R.S. 33:404.1 provides:
§ 404.1. Compensation of municipal officers
The board of aldermen shall by ordinance fix the compensation of the mayor, aldermen, clerk, chief of police, and all other municipal officers. The board of aldermen may by ordinance increase or decrease their compensation and the compensation of any non-elected municipal officer and may increase the compensation of other elected officials. However, the board of aldermen shall not reduce the compensation of any elected official during the term for which he is elected.
OPINION NUMBER 99-185
June 17, 1999
54 Insurance 71 Municipalities 77 Officers: Local and Municipal 90-A-2 Public funds, load, pledge or grants Article VI, Section 12 Article VII, Section 14 Article X, Section 23 of the 1974 Louisiana Constitution R.S. 33:404.1 and 5151
Compensation, including health insurance premium payments, for the Mayor and Board of Aldermen of the Village of Sicily Island must be fixed by ordinance. Ordinance fixing compensation cannot have the effect of reducing compensation currently being paid to members of the Board of Aldermen.
Ms. Barbara R. Jackson Town Clerk Village of Sicily Island Post Office Box 45 Sicily Island, LA 71368
Dear Ms. Jackson:
You have requested an opinion of the Attorney General relative to the legal authority for the Village of Sicily Island (Village) to utilize public funds for the payment of health insurance premiums for the Mayor and the elected members of the Board of Aldermen (Board). You also request our review of a proposed ordinance (No. 72) which sets the amount of compensation for the Mayor and the Board.
In answer to your first question, we draw your attention to Article VII, Section 14 of the 1974 Louisiana Constitution. Section 14(A) generally prohibits the loan, pledge and/or donation of public funds, credit and property to any person, association or corporation, public or private. However, constitutional exceptions to this prohibition are found in Section 14(B) which provides, in pertinent part, the following:
 Nothing in this Section shall prevent (2) contributions of public funds to pension and insurance programs for the benefit of public employees.
As can be seen from the above, the Constitution enables state and local entities (e.g., the Village) to fund insurance programs for its employees and/or officials. This authority has been implemented by the Louisiana Legislature in R.S. 42:851 and33:5151, and recognized by Attorney General Opinion No. 96-153.
R.S. 33:5151 provides as follows:
 A. Any municipality or political subdivision of the state may make contracts of insurance with any insurance company legally authorized to do business in this state insuring their employees and officials under policies of group insurance covering hospitalization, and retirement, for such employees and officials, and may agree to match the payments of the employees and officials for the premiums or charges for any such contracts payable out of the funds of such municipality or political subdivision, respectively.
 B. Nothing in this Section or in R.S. 42:851 shall be construed to limit the contribution of a local governmental subdivision toward the payment of premiums for accident and health protection for its employees or their dependents, or both.
As can be gleaned from the above, the Village is authorized to pay all or a portion of the premiums for health insurance for the Mayor and members of the Board. The payment must be accomplished through the passage of an ordinance, as well as the designation of funds for this purpose reflected in the Village's budget. We turn now to the consideration of proposed Ordinance No. 72.
Ordinance No. 72 proposes to fix the compensation of the Mayor and members of the Board at $350 per month. You state that the adoption of this ordinance will have the effect of reducing the health insurance premiums currently being paid on behalf of one of the Board members. You ask whether this reduction is permissible.
We initially draw your attention to R.S. 33:404.1 which provides:
§ 404.1. Compensation of municipal officers
 The board of aldermen shall by ordinance fix the compensation of the mayor, aldermen, clerk, chief of police, and all other municipal officers. The board of aldermen may by ordinance increase or decrease their compensation and the compensation of any nonelected municipal officer and may increase the compensation of other elected officials. However, the board of aldermen shall not reduce the compensation of any elected official during the term for which he is elected. (Emphasis added.)
It is clear from the above provision that the compensation for the Mayor and Board members must be fixed by ordinance. Further, this office has consistently held that the payment and/or reimbursement of health insurance premiums constitutes a related benefit and/or "compensation" within the meaning of the above statute. Attorney General Opinion Nos. 96-153, 94-316, 92-547 and 91-314. Accordingly, the Village must adopt an ordinance fixing the compensation of the Mayor and members of the Board, which would include the payment of health insurance premiums.
We turn now to your final question, to wit: Is it legally permissible to pass an ordinance fixing the compensation of the Mayor and the Board which would have the effect of reducing the compensation (i.e., health insurance premiums) currently being paid on behalf of one of the members of the Board? As previously noted, R.S. 33:404.1 specifically provides:
 . . . However, the board of aldermen shall not reduce the compensation of the Mayor or any elected official during the term for which he is elected.
We also draw your attention to Article VI, Section 12 and Article X, Section 23 of the 1974 Louisiana Constitution, which provide:
§ 12. Local Officials; Compensation
 Section 12. The compensation or method of fixing the compensation of any elected official of any local governmental subdivision which operates under a home rule charter or plan of government, as provided in Sections 4 and 5 of this Article, shall be provided in its charter. The compensation or method of fixing the compensation of an elected official of any other local governmental subdivision shall be provided by law. Compensation of a local official shall not be reduced during the term for which he is elected. (Emphasis added.)
 § 23. Compensation of Elected Public Officials; Reduction
 Section 23. The compensation of an elected public official shall not be reduced during the term for which he is elected.
As can be seen from the above, both state law and constitutional provisions unequivocally prohibit the reduction of the compensation of an elected public official during the term for which he or she is elected. See also Redwine v. State,649 So.2d 61 (La.App. 1st Cir. 1994). As noted above, this prohibition extends to the reduction of payments for hospital insurance premiums. See Attorney General Opinion Nos. 96-513, 96-380, 96-241, 96-153, 94-310, 93-608, 92-547 and 91-314.
In summary, it is the opinion of this office that the compensation of the Mayor and Board of Aldermen must be fixed by Village ordinance. Health insurance premiums constitute a related benefit and/or compensation of elected officials. An ordinance fixing the compensation of the Mayor and the Board cannot reduce the salary and/or health insurance premiums currently being paid.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/sfj
OPINION NO. 81-251
March 18, 1981
71 — MUNICIPALITIES 107 — SHERIFFS, CONSTABLES, MARSHALS
Board is prohibited from reducing the salary of chief of police.
Honorable Walter M. Godwin Chief of Police Village of Woodworth P.O. Box 177 Woodworth, Louisiana 71425
Dear Chief Godwin:
Your letter addressed to the Attorney General has been referred to the undersigned for attention and reply. Therein, you posed the following questions:
1. At the present time I am the only municipal police officer in the village of Woodworth. Does the board of aldermen have the authority to set my working hours? It would seem to we that for them to do so would impair "the inherent powers" of an elected chief of police.
2. Several years ago the board of aldermen established my salary at $3.75 per hour. At one time I worked part-time, but for the past several years I have been full-time. Does the board of aldermen have the authority to reduce my hours or rate of pay?
3. Can the board of aldermen hire a patrolmen and pay him at a higher rate of pay than at which I am paid?
4. Until recently I have always had 1 or 2 patron men in my department. Several months ago the board of aldermen fired my two full-time patrolmen and have refused to hire anymore. Can the board of aldermen be legally required to hire additional police officers for the town?
5. Since a small town such as ours cannot afford 24 hour a day, seven day a week police patrol, it has been my policy to vary the hours of operation so that it appears to the casual observer that we have more police coverage than we actually have. This is done as a deterrent to crime and I feel it has been successful. On a previous occasion when, at the insistence of the board of aldermen, I distributed to them a copy of the police duty schedule, a particularly brazen burglary was perpetrated under circumstances that made it apparent that the burglars had knowledge the schedule. Since then I have refused to publish a schedule. I have also refused to make known which hours of the day were worked since would-be criminals could establish a trend from this. My question is, can the board of aldermen force me to divulge this information and does a citizen have a right to this information?
In answering your first question, Lentini v. City of Kenner,211 So.2d 311 (1968), provides that the chief of police has inherent powers to manage the affairs of his office. As such, it would be an infringement "upon said powers for the board to set the chief' s working hours.
In answering your second question, it is our opinion that the board is prohibited from reducing your salary pursuant to Article 6, Section 12 of the Louisiana Constitution which provides that "Compensation of a local official shall not be reduced during the term for which he is elected." The only prohibition regarding the board's reducing the work hours is that this can not infringe upon the chief's unquestionable right to manage the affairs of his office.
In answering your third question, the answer is no. To hire a patrolman and pay him a higher rate of pay than the chief would clearly constitute an act of undermining the status the chief of police traditionally holds in relation to the other elected officials in general and his personnel in particular.
In answering your fourth question, both R.S. 33:402(4) and. R.S. 33:423
provide that where the chief of police is an elected official he shall make recommendations to the mayor and board for the appointment of police personnel. However, neither of these statutes nor any other related statutes provide that the board may be legally required to hire additional police officers for the town.
In answering your final question, R.S. 33:423 provides that the chief "shall perform all other duties required of him by ordinance." Therefore, if the board enacts an ordinance which provides that the chief shall disclose his work schedule, then he would be compelled to do so. As such, said work schedule will then be covered by our public records statutes and any citizen would be entitled to obtain access to same as provided by these statutes. However, this is not to infer that investigative records and reports used by the chief for criminal investigations are subject to inspection; these are exempt from public inspection by the applicable statutes which govern same.
We trust that this answers your questions, If further assistance is needed, please contact this office.
Very truly yours,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY: ROBERT L. DANNER, JR. Assistant Attorney General
RLD, jr: caj