788 So.2d 1283 (2001)
Thomas "Tom" McCAIG
v.
TOWN OF GUEYDAN.
No. 01-0140.
Court of Appeal of Louisiana, Third Circuit.
June 27, 2001.
*1284 Edward G. Saal, Jr., Gueydan, LA, Counsel for Defendant/Appellant Town of Gueydan.
Richard J. Guidry, Lafayette, LA, Counsel for Plaintiff/Appellee Thomas "Tom" McCaig.
Court composed of SYLVIA R. COOKS, OSWALD A. DECUIR and GLENN B. GREMILLION, Judges.
COOKS, Judge.
The Town of Gueydan appeals the trial court's judgment awarding Tom McCaig $924.00 in past due wages. For the following reasons, we affirm.

FACTS
On May 5, 1999, at the regular meeting of the Board of Aldermen of the Town of Gueydan, Chief of Police Joseph Breaux recommended that Thomas McCaig be added to the roster of the Town's Auxiliary Police. The Board of Aldermen formally approved the recommendation.
Subsequent to his becoming an auxiliary police officer, Mr. McCaig was asked to replace Chief Breaux on several dates performing shift work. Chief Breaux was forced to miss a number of shifts to care for his wife, who was suffering from cancer. Chief Breaux then submitted a "Request for Overtime Pay" to the Board of Aldermen in order to pay Mr. McCaig $924.00 for the hours of shift work. The Mayor of Gueydan, Manson Saltzman, denied the request for overtime pay.
Mr. McCaig then filed a small claims affidavit for $924.00 in past due wages. The Town continued its refusal to pay and requested an opinion from the Louisiana Attorney General's Office on whether the Town was legally obligated to pay the wages. In Opinion No. 00-113, the Attorney General's Office concluded as follows:
... when the governing authority appoints individuals as auxiliary police officer upon the Chief of Police's recommendation as volunteers, they are "hired" only on that basis. They cannot be compensated without approval of the governing authority.
Mr. McCaig contended the opinion was flawed because it relied on incomplete and erroneous information provided by the Town. After a trial on the merits, the lower court rendered judgment in favor of Mr. McCaig, awarding him $924.00 in past due wages. In accordance with a request by the Town, the trial court issued written reasons for judgment, stating in part that "Chief Breaux has the authority to spend the appropriated money within his department, and this court finds that the Request for Overtime Pay should have been granted."
The Town appealed, contending the trial court erred "in ruling that an elected Chief of Police in a Lawrason Act Municipality has the authority to pay auxiliary police *1285 officers without the approval of the mayor and board of aldermen."

ANALYSIS
The Lawrason Act, La.R.S. 33:404, grants the mayor the following pertinent authority:
(1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law....
B. The provisions of this Section shall not be construed to alter, affect, or amend any powers, duties, and functions of any elected chief of police as set forth in R.S. 33:423, R.S. 33:423.2, and R.S. 33:423.3.
(Emphasis added.)
La.R.S. 33:423 provides:
§ 423. Duties of marshal
A. The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of this Part, R.S. 33:321 et seq., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel.
Chief Breaux, who was elected to his position, testified that three full-time officers work for the Gueydan police. To have the necessary manpower, Chief Breaux also works occasional shifts. Auxiliary officers are volunteer officers who agree to work twelve hours a month without pay at special events, such as high school games or festivals.
The evidence established, historically, if Chief Breaux or one of the regular officers was unable to work an assigned shift, an auxiliary officer was called as a substitute. When this occurred, Chief Breaux routinely submitted requests for payment to the Board of Aldermen to compensate the substituting auxiliary officers. Numerous witnesses testified in the past, auxiliary officers were paid minimum wage when performing shift work for a sick or vacationing regular officer. There was no indication or any allegation presented in the record that any such request for payment had ever been refused by the Town.
Aldermen William Smith, who was an auxiliary officer from 1995 to 1999, testified he was paid to take Chief Breaux's shift on two occasions. Aldermen Smith testified if Chief Breaux signed off on a request to pay an auxiliary officer for shift work, the request was approved.
The Town relies upon Attorney General Opinion No. 00-113, which concluded auxiliary officers cannot be compensated without approval of the governing authority. Mr. McCaig argues this opinion was based on incomplete and erroneous information provided by the Town to the Attorney General's office. Specifically, Mr. McCaig asserts the opinion was largely premised on the erroneous notion that auxiliary officers were not paid for services performed above and beyond their volunteer work for the Town. Opinions of the Attorney General are advisory only and not binding. We have recognized their persuasive authority, particularly where no cases on point exists. Roy v. Avoyelles Parish School Board, 552 So.2d 63 (La. App. 3 Cir.1989). However, we do not find *1286 Attorney General Opinion No 00-113 persuasive, especially in light of the case of Doyle v. City of Harahan, 610 So.2d 272 (La.App. 5 Cir.1992). In Doyle, the issue involved the relative authority of the chief of police and the mayor in a Lawrason Act municipality to control police department spending. The court in Doyle referenced Attorney General's Opinion 86-589 which stated as follows:
... the mayor does not have the authority to control the expenditures of the police department. The chief of police has the inherent authority to control or administer the day to day operations of the police department. This inherent authority includes the authority to control and administer police department property and personnel, which includes police department funds.
The fifth circuit concluded as follows:
We hold that once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. This is consistent with the Second Circuit's ruling, on other facts, in Cogswell v. Town of Logansport, 321 So.2d 774, 779 (La.App.1975), that the chief of police has "the power to supervise the operation of the police department and assign its personnel and equipment...."
Although Chief Breaux testified no funding was specifically budgeted for payment of auxiliary officers, he did state the overall budget had sufficient funds to cover these payments. The trial court also noted that Chief Breaux actually returned $5,000 to the Board of Aldermen from his 1999 budget.
It was undisputed that Mr. McCaig performed the shift work at issue. There was also no question that the Town of Gueydan had always paid auxiliary officers in the past for any hours of shift work performed. The trial court held that "based on this unwritten policy, plus the case of Doyle v. City of Harahan, 610 So.2d 272 (La.App. 5th Cir.1992), this Court feels that the Town of Gueydan should pay McCaig minimum wage for the hours that he worked, in an amount totaling $924.00." We agree and affirm the trial court's judgment. All costs of this appeal are assessed against the Town of Gueydan.
AFFIRMED.