GASKINS, J.
Louisiana Farm Bureau Casualty Insurance Company (“Farm Bureau”) appeals from a judgment in favor of plaintiff Kim Fletcher. The issue presented in this auto accident case is whether the trial court’s general damage award of $18,000.00 was excessive. For the following reasons, we amend and affirm.
FACTS
On December 26, 1998, Kim Fletcher, age 27, was riding as a passenger in her mother’s 1991 Ford Ranger pickup truck on Louisiana Highway 139 in Ouachita Parish. The truck was driven by Jeremy Nolan, Ms. Fletcher’s boyfriend. A 1984 Oldsmobile driven by Dawn Simmons was going west when it struck the right front of the northbound Fletcher vehicle. Photos of the Fletcher vehicle show moderate damage to the right front bumper and surrounding area; they also demonstrate that the collision broke off a part of the vehicle’s suspension, rendering it undrivea-ble. The vehicle was later declared a total loss.
Ms. Fletcher sued Ms. Simmons and Ms. Simmons’ liability insurer, Safeway Insurance Company (“Safeway”), as well as the UM insurer of her mother’s truck, Farm Bureau. Farm Bureau later made a cross-claim against Ms. Simmons and Safeway for the damage to the vehicle. The parties stipulated to Ms. Simmons’ liability leaving only the issue of damages for trial.
Ms. Fletcher had no symptoms of pain or restriction of movement immediately after the accident, but that night she began to experience soreness between her neck and shoulder blades. She did not seek medical |2attention at that time because the truck, her only means of transportation, was undriveable due to the accident.
On December 30, Ms. Fletcher went to the emergency room at St. Francis Medical Center. The ER physician ordered an x-ray and prescribed pain medicine and muscle relaxants. The x-ray was negative.
*294 Ms. Fletcher continued to have neck and shoulder pain. On January 4, 1999, she went to Dr. Clyde Elliott, a general family practitioner recommended by her attorney. Dr. Elliott observed that Ms. Fletcher had pain in her neck but had full range of motion. He diagnosed her with musculo-skeletal strain. Dr. Elliott gave her anti-inflammatory and pain medications and a muscle relaxant. However, he did not order physical therapy.
Ms. Fletcher was employed as a substitute “on call” mail carrier for the post office in West Monroe, and her job required her to drive to deliver the mail. She said that the more she drove, the more pain she experienced due to the twisting and turning required. She returned to Dr. Elliott on January 11, 1999. Dr. Elliott again found that she had a normal range of motion in her neck but that she still had some tenderness upon palpation between her shoulder blades. The doctor reduced Ms. Fletcher’s medication but did not order physical therapy.
Ms. Fletcher continued to have neck and shoulder pain and saw Dr. Elliott again on January 22,1999. His findings at this visit were similar to those in the earlier visits. The doctor maintained her current medication. He said that he advised Ms. Fletcher to return in two weeks, but she denied |3this. She testified that the doctor told her that she had a strained muscle and that it would just take time for it to heal. Consequently, she felt like it would heal on its own and there was no point in seeing the doctor again. Dr. Elliott described Ms. Fletcher’s problem as a moderate cervical strain injury and said that he would have expected it to heal in six to eight weeks. He never prescribed physical therapy for Ms. Fletcher, but said that he would have done so if she still had complaints of pain at her next visit.
Ms. Fletcher said that she continued to have pain in her neck and shoulders when she was driving and delivering the mail, particularly when she had to twist and turn to get mail from the back of the mail truck. However, none of the doctors instructed her not to work; she missed only one day of work due to the injury. She also said that the pain restricted her ability to play with her two sons, who were 10 and 12 years old at the time of trial. She said that she used to be able to play sports, either on her own or with the older child, or video games with the younger child for long periods, but since her injury she can do so only in pain. She further said that she used to be able to work in her father’s approximately four-acre produce garden for extra income; however, she could not do so in the spring of 1999 although she apparently did in subsequent years. She was able to drive routinely between Monroe and Lake Providence to her father’s home. Her live-in boyfriend testified that he took on some of Ms. Fletcher’s household chores like mopping because she was unable to do them due to her pain.
After her last visit with Dr. Elliott, Ms. Fletcher took the remaining pain and anti-inflammatory medicine until it was gone. She self-treated by |4using a heating pad on the affected area and also took hot baths and hot showers with a massaging showerhead. However, her pain persisted, and on June 10,1999, she went to Dr. John Ward, an orthopedic surgeon recommended by her lawyer. On the patient medical history form, she indicated that she had joint pain, joint stiffness, muscle pain or cramps and back pain. Dr. Ward diagnosed her with a strained muscle but wanted her to have an MRI of her cervical spine. Ms. Fletcher scheduled an appointment to have an MRI, but was unable to make the appointment because she was called into work. The appointment was *295 never rescheduled. Dr. Ward testified at trial that “when somebody has persistent complaints as Ms. Fletcher has, alter six months following the injury, you always have to worry that there is some other process underlying the symptoms.... ”
Dr. Ward also recommended physical therapy for Ms. Fletcher, but she did not attend any therapy. She testified that her job prohibited her from doing so. She opined that her job was the best she could obtain due to her lack of education, but the part-time on-call nature of the job was a factor that prevented her from obtaining therapy for her injury. Dr. Ward indicated that it would be speculation to suppose that physical therapy would have resolved Ms. Fletcher’s problem. Regarding Ms. Fletcher’s prognosis for recovery circa 1999, Dr. Ward testified that he had seen “some people that recover in two months and I’ve seen some people that it can take up to a couple of years.” Dr. Ward disagreed with defense counsel’s assertion that Ms. Fletcher failed to follow medical treatment that could have resolved | ¡jier condition. Ms. Fletcher did not seek medical treatment after her visit with Dr. Ward and testified at trial that she did not like doctors.
At the 2002 trial of this matter, Ms. Fletcher said that her pain persisted and that it continued to limit her ability to do the things she normally did such as play with her sons. Ms. Fletcher related that she continued to take over-the-counter pain relievers and to use the heating pad or take hot showers to get relief. Her boyfriend testified that there remained a “big difference” in the sports activities she was able to engage in with her children.
After taking the case under advisement, the court issued verbal reasons for judgment. The court stated that it found Ms. Fletcher and her boyfriend to be “very credible witnesses” and that Ms. Fletcher gave a good explanation of why she did not receive significant follow-up treatment after the accident. The court then adopted as its own reasons the plaintiffs’ post-trial brief and attachments. Based on these reasons, the court awarded Ms. Fletcher $18,000.00 in general damages against all defendants, in addition to her medical expenses of $1,130.30 and expert witness fees. The court also awarded $2,646.50 to Farm Bureau on the vehicle damage claim.
Farm Bureau now appeals. Ms. Simmons and Safeway satisfied their portion of the judgment and chose to not file a brief.
DISCUSSION
Farm Bureau urges on appeal that the trial court awarded an excessive amount of damages and that the plaintiff failed to mitigate her damages. |f,Under the circumstances, we believe it appropriate to consider both matters together.
An injured plaintiff has the duty to take reasonable steps to mitigate his damages. Aisole v. Dean, 574 So.2d 1248 (La.1991). However, the burden rests on the tort-feasor to show that the injured plaintiff failed to mitigate his damages. The defendant must show (1) that the plaintiffs conduct after the injury was unreasonable and (2) that the unreasonable conduct had the consequence of aggravating the harm. Hunt v. Long, 33,395 (La.App.2d Cir.6/21/00), 763 So.2d 811; Etheredge v. St. Paul Mercury Insurance Company, 35,832 (La.App.2d Cir.4/3/02), 814 So.2d 119. See Evans v. Regional Transit Authority, 2001-1355 (La.App. 4th Cir.7/10/02), 823 So.2d 438.
Before the trial court’s damage award may be disturbed, the record must clearly show that the factfinder abused its broad discretion in making the award. Jackson v. A.L. & W. Moore Trucking, 609 So.2d 1064 (La.App. 2d Cir.1992); Hollo *296 way v. Midland Risk Insurance Company, 36,262 (La.App.2d Cir.10/30/02), 832 So.2d 1004, writ denied, 2002-3247 (La.3/28/03), 840 So.2d 571. The finding of an abuse of much discretion must be based on the particular injuries sustained and their effect on the particular injured person. After a determination that an award is an abuse of discretion, the appellate court may lower an excessive award to the highest amount or raise an inadequate award to the lowest point reasonably within the factfinder’s discretion. Holloway, supra.
17Although the discretion afforded the trial court in assessing damages is great, it is not unbridled, and we are convinced from this record that the trial court abused its discretion in awarding $18,000.00 in general damages to Ms. Fletcher. There was no testimony showing that Ms. Fletcher needed treatment at or medical transportation from the accident scene. She suffered the most pain in the several days following the accident, but was thereafter able to resume her normal activities with some limitations. She had a total of only four doctor visits. Neither of the doctors she saw recommended surgery, and no future surgery was contemplated. Likewise, she missed only a single day of work due to her injury.
Although Ms. Fletcher complained of continuing pain at the time of the 2002 trial, her last visit to a doctor was in the summer of 1999. Ms. Fletcher has been managing her pain herself with over-the-counter pain medicines and has not sought the recommended physical therapy. As in Marcum v. Johnston, 32,634 (La.App.2d Cir.1/26/00), 750 So.2d 1186, 1190, this is a factor indicative of the severity of her injury. However, we find insufficient evidence on this record to establish that Ms. Fletcher failed to mitigate her damages. The unrebutted testimony of Dr. Ward shows that Ms. Fletcher’s failure to have an MRI and to have physical therapy were unknown factors in the duration of her problems.
Given the nature of Ms. Fletcher’s work and her testimony that her work involves a great deal of twisting that aggravates her pain, we believe that an award of $12,000.00 is the highest reasonable general damage award. This is a greater sum than awarded in some similar cases, but is appropriate for this plaintiff given her job and the continuing residual effect of the injury. Compare Marcum, supra; Minkler v. Chumley, 32,558 (La.App.2d Cir.12/8/99), 747 So.2d 720, and cases cited therein; Manuel v. State Farm Mutual Automobile Company, 30,765 (La.App.2d Cir.8/19/98), 717 So.2d 277 and cases cited therein.
CONCLUSION
For the reasons cited above, the judgment of the trial court is amended to award Ms. Fletcher $12,000.00 in general damages; in all other respects, the judgment is affirmed. Costs of this appeal are assessed to Kim Fletcher.
AFFIRMED AS AMENDED.