STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

DR. CLARK GUNDERSON, ET AL.

VERSUS

F.A. RICHARD & ASSOCIATES, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2004-002417
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE

**********

**J. DAVID PAINTER**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and J. David Painter, Judges.

AFFIRMED.

Perry R. Staub, Jr.
Donald J. Miester, Jr.
1100 Poydras St., Ste. 2100
New Orleans, LA 70163
Counsel for Defendant-Appellant:
     First Health Group Corp.

James R. Nieset
1123 Pithon St.
Lake Charles, LA 70601
Counsel for Defendant-Appellant:
     First Health Group Corp.

John S. Bradford
William B. Monk
One Lakeside Plaza, Fourth Fl.
Lake Charles, LA 70601
Counsel for Plaintiffs-Appellees:
     Dr. Clark A. Gunderson,
     et al.

Harry T. Lemmon
650 Poydras St.
New Orleans, LA. 70130
Counsel for Defendant-Appellant:
First Health Group Corp.

Thomas A. Filo
Michael K. Cox
723 Broad St.
Lake Charles, LA
Counsel for Plaintiffs-Appellees:
     Dr. Clark A. Gunderson,
     et al.

Stephen B. Murray
Stephen B. Murray, Jr.
Arthur M. Murray
650 Poydras St., Ste. 1100
Counsel for Plaintiffs-Appellees:
     Dr. Clark A. Gunderson,
     et al.

**PAINTER, Judge**.

Defendant, First Health Group Corporation (First Health), appeals the trial court's grant of Plaintiff Class' motion for summary judgment and the denial of its own motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs, Drs. Clark A. Gunderson and Frank A. Lopez, Beutler-England Chiropractic Clinic (Beutler)and Southwest Louisiana Hospital Association d/b/a/ Lake Charles Memorial Hospital (LCMH) (Plaintiffs), brought this action for statutory damages against Defendants, F.A. Richard & Associates, Inc.; First Health Group Corporation (First Health); Focus Healthcare Management, Inc.; Cambridge Integrated Services Group, Inc.; National Loss Control Management, Inc.; and AIG Claim Services, Inc (Defendants). In their petition, Plaintiffs stated that Defendants entered into contracts with them pursuant to the Preferred Provider Organization Act (hereinafter "PPOA"), La.R.S. 40:2201, et seq., which allowed Defendants' clients/payors to pay a discounted rate for health care services. They alleged that Defendants routinely reimbursed them in workers' compensation cases at the lower PPOA contracted rates, rather than at the higher mandated workers' compensation rates. In doing so, the healthcare providers claim that Defendants violated the provisions of La.R.S. 40:2203.1 by failing to provide them with prior notice of their intent to reimburse at the PPO rates, either by providing the injured worker with a PPO card or by providing thirty days' written notice of their intent to utilize an existing PPO agreement. La.R.S. 40:2203.1(B). Plaintiffs sought and received class certification.

1

Several Defendants entered into settlement agreements with Plaintiffs. In November 2008, Plaintiffs filed a motion for partial summary judgment as to their claims against First Health seeking payment of the minimum amount of damages mandated by La.R.S. 40:2203.1(G) for each violation indicated by First Health's records. In January 2009, First Health also filed a motion for summary judgment asserting that the choice of law clause included in the First Health provider agreements required application of California or Illinois law rather than the Louisiana Preferred Provider Statute, La.R.S. 40:2201, et seq.

Following proceedings outlined in *Gunderson v. F.A.Richard & Assoc. Inc.*, 10-61 (La.App. 3 Cir. __/__/10), ___ So.3d.___, the trial court heard arguments on the motions. After the hearing, the trial court granted Plaintiffs' motion for partial summary judgment, awarded statutory damages, and denied First Health's motion. The court designated the judgment as final and immediately appealable pursuant to La.Code Civ.P. art 1915(B). First Health appeals.

## DISCUSSION

*Failure to Comply with Uniform Rules-Courts of Appeal 2-12.4*

We first note that First Health has, with regard to several of its assignments of error, failed to provide references to the record volume and page number of the evidence to which it refers. First Health often refers in only the most general way to "evidence" it presented to the trial court without referring to the document or documents by name or pinpointing in which of the over seventy volumes of records and exhibits the document or documents can be found. Uniform Rules-Courts of Appeal 2-12.4 states that:

> The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the

record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made.

While it would be appropriate to disregard the arguments made in this respect, we will address them out of an abundance of caution. We note, however, that First Health's failure to provide record citations suggests that many of these assignments were interposed only for purposes of delay and confusion.

*Trial Court's Jurisdiction to Hear the Motions for Summary Judgment*

First Health asserts that its appeal of the trial court's denial of its motion to decertify the Plaintiff Class divested the trial court of jurisdiction to hear the motions for summary judgment. However, on review of the record, we cannot find any evidence that the appeal was perfected before the motions were heard.

Louisiana Code of Civil Procedure Article 2088(A) provides in pertinent part that:

> The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal.

While it appears from the transcript of the hearings that a motion for appeal was tendered to the trial court prior to the hearing on the motions for summary judgment, there is nothing of record to indicate that it was filed into the trial court record or signed before the hearings. We further note that First Health proceeded with the hearing on the motions for summary judgment without objection and without calling any lack of jurisdiction to the attention of the trial court. Therefore, we cannot conclude that the trial court heard the motions for summary judgment after it was divested of jurisdiction by filing and/or signing of the motion for appeal.

3

*Choice of Law*

First Health argues that the trial court erred in denying its motion for summary judgment because most of First Health's provider agreements require application of California or Illinois law.

Louisiana Civil Code Article 3540 provides that: "All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537."

La.R.S. 40:2203.1 provides in pertinent part that its notice provisions "shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part." The mandatory provisions of this statute evidence a strong public policy in favor of notice to health care providers that a PPO discount may be taken. First Health itself raises, in its appeal brief, the legislature's interest in preventing doctors from becoming victims of "silent" PPOs. While the law of another state may be applied to the contract in general, it may not be used to circumvent the notice requirement.

*Existence of Class Representatives*

First Health asserts that the trial court erred in proceeding with the summary judgment where the U.S. District Court for the Western District of Louisiana had issued injunctions prohibiting the class representatives from pursuing their own claims against First Health. This issue has been disposed of in the companion case hereto, *Gunderson v. F.A. Richard & Assoc., Inc.*, 10-61 (La.App. 3 Cir. __/__10),

4

___ So.3d ___, wherein this court found that the injunctions did not present an impediment to the representatives acting on behalf of the class.

*Prescription*

First Health argues that Plaintiffs' cause of action has prescribed because the appropriate prescriptive period is one year rather than the ten year prescriptive period applied by the trial court.

First Health asserts that the prescriptive period applicable to unfair trade practice claims is applicable to claims for violation of La.R.S. 40:2203.1(B). In support of this position, it cites Louisiana Attorney General Opinion 92-824, which addresses a claim under La.R.S. La.R.S. 40:2205(5)(c) which concerns a licensed physician denied access to a PPO without ever having the opportunity to submit an application. The attorney general found that the exclusion would be considered an unfair trade practice. "Opinions of the Attorney General are advisory only and not binding." *McCaig v. Town of Gueydan*, 01-0140, p. 3 (La.App. 3 Cir. 6/27/01), 788 So.2d 1283, 1285. Even should we find the opinion persuasive, it in no way suggests that every violation of the PPOA is an unfair trade practice and does not purport to extend the prescriptive period applicable to unfair trade practices to the entire PPOA. In *Glod v. Baker*, 04-1483, p.11 (La.App. 3 Cir. 3/23/05), 899 So.2d 642, 653, cited by First Health in support of its position, this court explained that: "Conduct that violates the Unfair Trade Practices Act must involve fraud, misrepresentation, deception, or unethical conduct." *Id.* at 649-650 (citing *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 01-1096 (La.App. 4 Cir. 3/6/02), 812 So.2d 834).

5

The conduct alleged by Plaintiffs does not meet those criteria. Plaintiffs' petition alleges a cause of action for failure to comply with a statutory notice requirement.

The Louisiana PPOA does not set out a prescriptive period for bringing an action for violation of the notice requirement of La.R.S. 40:2203.1. This action is personal in nature as defined by La.Code Civ.P. art. 422, which states that:

> A personal action is one brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess.
>
> A real action is one brought to enforce rights in, to, or upon immovable property.
>
> A mixed action is one brought to enforce both rights in, to, or upon immovable property, and a related obligation against the owner, claimant, or possessor thereof.

Louisiana Civil Code Article 3499 states that personal actions are subject to a ten year prescriptive period "unless otherwise provided by legislation." Unlike the claim for past due wages considered by the court in *Fishbein v. State ex rel. Louisiana State Univ. Health Sciences Ctr.*, 04-2482 (La. 4/12/05), 898 So.2d 1260, the claim urged by Plaintiffs is not "otherwise provided by legislation." Accordingly, we find no error in the trial court's determination that a ten year prescriptive period applies to the action.

*Constitutionality of La.R.S. 40:2203.1*

First Health asserts that the PPOA is unconstitutionally vague and that its damage provision violates due process. However, First Health has not followed the mandatory procedural steps required to dispute the constitutionality of a statute.

> The party raising the issue bears the burden of proving a statute unconstitutional. *Id.* To do so, the complaining party must first raise the statute's unconstitutionality in the trial court, through specific pleadings

6

which particularize the grounds for the claim. *Vallo v. Gayle Oil Co., Inc.*, 94-1238 (La.11/30/94), 646 So.2d 859. Furthermore, the pleading attacking the statute's constitutionality must be served on the attorney general, affording him the opportunity to be heard on the issue. La. R.S. 49:257(C) and La.Code Civ.P. art. 1880.

*Rapides Parish Police Jury v. Catahoula Duck Club & Lodge L.L.C.*, 09-64, pp. 4-5

(La.App. 3 Cir. 11/18/09), 24 So.3d 988, 991.

These requirements have not been met. Therefore, we will not address the

constitutionality of La.R.S. 40:2203.1.

*Summary Judgment*

First Health asserts that the trial court erred in granting Plaintiffs' motion for

partial summary judgment on the issues of the applicability of La.R.S. 40:2203.1 to

First Health and on the issue of partial, undisputed damages.

> Louisiana Code of Civil Procedure Article 966(B) states that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." In *Boykin v. PPG Industries, Inc.*, 08-117, p. 4 (La.App. 3 Cir. 6/18/08), 987 So.2d 838, 842, *writs denied*, 08-1634 and 08-1649 (La.10/31/08) 994 So.2d 537, this court explained the standard of review applicable to motions for summary judgment, stating:

>> Appellate courts review a trial court's grant or denial of a motion for summary judgment using the de novo standard of review, under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate in any given case. *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226.

*Fruge v. ONOB, Inc.*, 09-1028, p. __ (La.App. 3 Cir. 3/10/10), ___ So.3d ___, ___.

1. Plaintiffs' Case for Summary Judgment

Plaintiffs' motion was supported by the affidavits of a number of Plaintiffs,

including at least two of the class representatives. The affidavits state that each was

a health care provider who rendered services to patients under the Louisiana Workers'

7

Compensation Act, that each was a member of the First Health PPO Network. Further, the affidavits further state that a PPO discount was applied to bills for treatment of various workers' compensation claimants, and that no notice was given of the discount, either via benefit card or via thirty day written notice. Additionally, a copy of the contract each had entered with the First Health PPO network was attached to the affidavit as an exhibit. Also included in support of the motion was the deposition of Greg Hale, designated representative of First Health. Hale stated that First Health is not a payor and that its activities involved network issues and bill review. He affirmed that no benefit cards were issued to workers' compensation clients. His testimony indicated that no notice was sent to workers' compensation health care providers since First Health did not consider La.R.S. 40:2203.1 applicable to workers's compensation. He noted that lists of benefit providers who could access the PPO network were sent to the health care providers at the time the contracts were entered but that thereafter, a provider manual listing the entities accessing the PPO network is available on their website and that no updates are sent to the health care providers. Also attached to the memorandum in support of the motion for partial summary judgment was a deposition of Shelly McCarthy, who acted as First Health's designated corporate representative in another suit. She stated that no card was issued to workers' compensation clients and that no written notice was issued in lieu of a card.

On appeal, First Health first asserts that the deposition of Shelly McCarthy was inadmissible because it was taken in another matter. However, even if the McCarthy deposition should not have been accepted into evidence, the Hale deposition sufficiently supports Plaintiffs' arguments.

8

Plaintiffs additionally relied on the deposition of Lester Langley, Jr., a certified public accountant. He affirmed that he used a spreadsheet prepared by First Health to perform calculations to ascertain PPO discounts taken. In his affidavit, he describes which records were removed from his calculations and notes that the total number of discounted accesses to Plaintiffs' services multiplied by $2,000.00 is $262,048,000.00.

> The initial burden of proof to show there is no genuine issue of material fact remains with the movant. *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533 (La.2/20/04), 866 So.2d 228. If the movant has made a prima facie case that the motion should be granted, the burden shifts to the adverse party to produce enough evidence to show that some issues of material fact remain. *Id*. If the non-moving party fails to produce the evidence, the court must grant the motion as a matter of law. *Id*.

*Moreno Properties Two, L.L.C. v. Acadiana Inv. Group*, L.L.C., 09-634, p. 5 (La.App. 3 Cir. 12/9/09), 25 So.3d 232, 236.

We find the evidence presented by Plaintiffs to be sufficient to make a prima facie case with regard to both the applicability of La.R.S. 40:2203.1 to First Health and the issue of partial damages. Accordingly, the burden shifts to First Health to show that issues of material fact remain as to these issues.

2. First Health's Rebuttal

    a. Applicability of Notice Provisions to Workers' Compensation Patients

First Health asserts that the notice provisions of La.R.S. 40:2203.1 do not apply to workers' compensation patients. They argue that the legislative history of the PPO and the language of the act show that the notice provisions apply only to group health plan participants.

La.R.S. 40:2203.1 provides in pertinent part that:

A. Except as otherwise provided in this Subsection, the requirements of this Section shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part. The provisions of this Section shall not apply to a group purchaser when providing health benefits through its own network or direct provider agreements or to such agreements of a group purchaser.

B. A preferred provider organization's alternative rates of payment shall not be enforceable or binding upon any provider unless such organization is clearly identified on the benefit card issued by the group purchaser or other entity accessing a group purchaser's contractual agreement or agreements and presented to the participating provider when medical care is provided.

. . . .

(5) When no benefit card is issued or utilized by a group purchaser or other entity, written notification shall be required of any entity accessing an existing group purchaser's contractual agreement or agreements at least thirty days prior to accessing services through a participating provider under such agreement or agreements.

Louisiana Civil Code Article 9 states that: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." We find no ambiguity in the notice provisions of La.R.S. 40:2203.1. Therefore, we need not consider the intent of the legislature in applying the statute.

Further, as La.Civ.Code art. 11 tells us: "The words of a law must be given their generally prevailing meaning." Therefore, we find that, contrary to the arguments made by First Health, when La.R.S. 40:2203.1 states that it applies to "all preferred provider organization agreements that are applicable to medical services

10

rendered in this state and to group purchasers as defined in this Part," it in fact, means all such agreements.[1]

   b. Exemption from Notice Requirements

First Health next argues that it is exempt from the notice requirements because La.R.S. 40:2203.1(A) states that: "The provisions of this Section shall not apply to a group purchaser when providing health benefits through its own network or direct provider agreements or to such agreements of a group purchaser."

First Health asserts, in its appellate brief, that this provision applies to it because:

> The evidence presented to the district court proved that that First Health assembled its own network through direct provider agreements, which authorize First Health to extend the negotiated payment rate to a defined group of payors. First Health provides health benefits through its assembled network: patients benefit by receiving quality, affordable health care; providers benefit by receiving more patients and quicker payments for their health care services; and payors benefit by paying less for quality health care than they otherwise would have.

The evidence does not support the conclusion that First Health *provides benefits* through its own PPO network or through a direct provider agreement. Nothing of record suggests that First Health provides benefits at all. The affidavit of Greg Mast, Director of Decision Support with Coventry Workers' Compensation Services and a former employee of First Health, states that "First Health does not actually reimburse providers for medical services provided to injured workers." He states that payors, including insurance companies, third party administrators and self

_____

[1]In that Plaintiffs argue that La.R.S. 40:2203.1 applies to workers' compensation PPOs, we do not reach the issue of whether a PPO agreement entered into in connection with an employer's group health insurance can be extended to apply the workers' compensation benefits payable to an employee to discount payments to medical providers in excess of the amounts provided by the Workers' Compensation Statute. First Health's arguments with regard to notice militate in favor of a finding that PPO discounts, as currently used, are incompatible with the Workers' Compensation laws of this state.

11

insureds, access the network and pay the bills. In other words, benefits are provided by employers and their insurers with First Health acting as a middleman. The cited provision of the Louisiana PPOA does not apply to entities such as First Health.

### c. Compliance Through Written Notification

First Health next argues that it complied with the notice provisions of La.R.S. 40L2203.1(B) in that it gave written notice thirty days before it accessed service from the healthcare provider.

Louisiana Revised Statutes 40:2203.1(B)(5) states:

When no benefit card is issued or utilized by a group purchaser or other entity, written notification shall be required of any entity accessing an existing group purchaser's contractual agreement or agreements at least thirty days prior to accessing services through a participating provider under such agreement or agreements.

We need not reach the question of who would be considered an entity accessing an existing group purchaser's contract, since we find that the notice cited by First Health is inadequate to fulfill the requirements of La.R.S. 40:2203.1(B).

The purpose of La.R.S. 40:2203.1(B)(5) is to give notice where no benefit card has been issued. However, the requirement is not a less stringent notification requirement. For the thirty day written notice to be effective, it must include everything which would be required by the statute of a benefit card. Anything less would defeat the purpose of the notice requirement. We are unable to find any evidence of record which fulfills the notice requirements of La.R.S. 40:2203.1 on behalf of First Health.

### d. Damages

With regard to damages, First Health points to the affidavit of Greg Mast. He asserts in his deposition that Langley's deposition reflects a fundamental misunderstanding of what information is conveyed by the First Health spreadsheets

12

showing discounts.   He asserts that First Health neither sees the actual bill nor the explanation of benefits which would show discounts actually taken.  Mast stated that the data in the spreadsheets analyzed by Langley does not reflect whether a discount or payment adjustment was taken and that such information can only be obtained through reference to the explanation of benefits issued by the payor.   He states that: "Given the current litigation in the State of Louisiana and/or for other reasons, many clients have decided not to take contractually available discounts reported by First Health."  He further states that the allowable amount field, used by Langley to obtain the PPO discount, may also reflect billing adjustments other than the PPO contractual discounts.

However, Mast's personal knowledge of many of his assertions has not been shown.

> The requirement of personal knowledge in the context of affidavits was recently addressed in *Hibernia National Bank v. Rivera*, 07-962, pp. 8-9 (La.App. 5 Cir. 9/30/08), 996 So.2d 534, 539-40 (citations omitted).  The court explained:
>
>> Personal knowledge means something the witness actually saw or heard, as distinguished from what he learned from some other person or source.  The purpose of the requirement of "personal knowledge" is to limit the affidavit to facts which the affiant saw, heard, or perceived with his own senses.  Portions of affidavits not based on personal knowledge of the affiant should not be considered by the trial court in deciding a motion for summary judgment.

*Denbury Onshore, L.L.C. v. Pucheu*, 08-1210, p. 18 (La.App. 3 Cir. 3/11/09), 6 So.3d 386, 398.

The affidavit does not establish the basis in personal knowledge of Mast's assertion that many clients do not take contractually available discounts.  No further evidence was introduced to establish this as fact.  Further, while he asserts that the

13

allowable amount field may reflect other discounts, he does not point to any instance on the spreadsheets, which he prepared, as an example of a discount not attributable to a PPO discount.

Further, First Health's corporate representative Greg Hale affirmed in his deposition that if the bill was going to be paid in full, there would be no need for First Health's discounting software program to be applied to the bill.

Accordingly, we find that the evidence presented by First Health in opposition to the motion for summary judgment is insufficient to show the existence of a material issue of fact. Therefore, we find that the motion for partial summary judgment was correctly granted.

*Defenses*

First Health argues, insofar as can be ascertained from a rather confused and confusing argument on this assignment of error, that the trial court erred in failing to apply the affirmative defenses of waiver, estoppel, failure to mitigate damages, and comparative fault to defeat the motion for summary judgment. Once Plaintiffs showed a prima facie case that its motion for summary judgment should be granted, the burden shifted to First Health to show that it could prove any affirmative defense that would defeat summary judgment. *See Louisiana Health Care Group, Inc. v. Allegiance Health Mgmt., Inc.*, 09-1093 (La.App. 3 Cir. 3/10/10), ___ So.3d. ___.

We first note that First Health does not supply, and we cannot find any authority for the idea that comparative fault principals can be applied to a penalty for a statutory violation. Therefore, we decline to apply comparative fault principals to the violation of La.R.S. 40:2203.1.

14

Further, we find the doctrine of equitable estoppel to be inapplicable to the situation before us. The second circuit in *Commercial Nat'l Bank v. Rowe*, 27,800, pp. 12-13 (La.App. 2 Cir. 1/24/96),666 So.2d 1312, 1319, set out the requirements of equitable estoppel as follows:

> (1) a representation by conduct or word by the person sought to be estopped, (2) justifiable reliance thereon; and (3) a change in position because of that reliance to the detriment of the person asserting estoppel. *Chevron USA Inc. v. Traillour Oil Co.*, 987 F.2d 1138 (5th Cir.1993); *Knippers v. Lambard*, 620 So.2d 1368 (La.App. 2d Cir.), *writ denied*, 629 So.2d 1169 (1993).
>
> Equitable estoppel is a doctrine of last resort; it is not favored by Louisiana courts, and will be applied only when justice so demands. *Robbins Tire & Rubber Co. v. Winnfield Retread Inc.*, 577 So.2d 1189 (La.App. 2d Cir.1991), and citations therein. The party invoking estoppel bears the burden of proving the facts on which it is founded. *KPW Associates v. S.S. Kresge Co.*, 535 So.2d 1173 (La.App. 2d Cir.1988), *writ denied*, 537 So.2d 1167 (1989). Equitable considerations and estoppel cannot prevail in conflict with the positive law. La.C.C. art. 4; *Palermo Land Co. v. Planning Comm'n*, 561 So.2d 482 (La.1990).

La. Civ.Code art. 4 provides:

> When no rule for a particular situation can be derived from the legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages.

There is a rule for this situation provided expressly by positive law which we have already determined in this case is clear and unambiguous. The statute requires adequate notice and imposes statutory damages for failure to comply with the notice requirement. First Health's failure to comply with the statutory requirement cannot be excused by any of the Plaintiffs' failure to object or by accepting payments. The statute imposes a clear duty on First Health. Equitable estoppel is indeed a remedy of last resort and is not favored by our courts. Moreover, the doctrine is inapplicable when it is in conflict with positive law. *See* La.Civ.Code art. 4 and *Palermo Land Co.*

15

*v. Planning Comm'n,* 561 So.2d 482 (La. 1990). Given the requirements of positive law regarding notice, we find the doctrine of equitable estoppel to be inapplicable here.

First Health argues that Plaintiffs could have used the provider agreements to mitigate their damages. As we have stated, the notice given Plaintiffs by the provider agreement was inadequate to provide the degree of notice required by the statute. First Health may not use an inadequate notice to avoid liability under the statute in whole or in part. Louisiana Revised Statutes 40:2203.1 expressly provides: "In no instance shall any provider be bound by the terms of a preferred provider organization agreement that is in violation of this Part." We further find that, even if a defense of mitigation of damages were applicable herein, First Health has failed to show it will meet its burden to prove that Plaintiffs' conduct was unreasonable and that the unreasonable conduct resulted in aggravation of the harm. *See Fletcher v. Simmons*, 37,758 La.App. 2 Cir. 10/29/03, 859 So.2d 292.

First Health further asserts that Plaintiffs waived their right to recover penalties under the statute when they renewed their contracts with First Health.

> Waiver is the relinquishment of a known right, power, or privilege. Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. *Gilbert v. B.D.O.W.S., Inc.*, 33,006 (La.App.2d Cir.6/23/00), 764 So.2d 313; *Maddox v. Keen*, 33,072 (La.App.2d Cir.4/7/00), 756 So.2d 1279.

*L.T. v. Chandler*, 40,417, p. 4 (La.App. 2 Cir. 12/14/05),917 So.2d 753, 757.

After reviewing the record, we find that nothing submitted from the filings or pleading makes waiver a genuine issue of fact in dispute. First Health offers no countervailing facts to support its defense of waiver.

16

*Designation of Judgment Regarding Damages as Final*

First Health further argues that the trial court erred in designating the damages portion of its judgment on Plaintiffs' motion for summary judgment as final under La.Code Civ.P. art 1915(B). This matter has been previously disposed of on a writ application filed by First Health, and we find no reason to change our decision in that regard. However, we will outline our reasoning with regard to this issue.

Louisiana Code of Civil Procedure Article 1915(B) provides, in pertinent part, the following:

> (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

Under La.Code Civ.P. art. 966(E), "summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case."

This court has previously set forth the procedure to be followed in reviewing an Article 1915(B) judgment designated without reasons. In *Fakier v. State, Bd. of Supervisors for Univ. of La. Sys.*, 08-111 (La.App. 3 Cir. 5/28/08), 983 So.2d 1024, this court examined the issue of whether a partial judgment was a final judgment for purposes of an immediate appeal when reasons were not given with the designation. The *Fakier* court noted that in *R.J. Messinger, Inc. v. Rosenblum,* 04-1664 (La. 3/2/05), 894 So.2d 1113, the supreme court adopted from *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360 (3rd Cir.1975), several non-exclusive factors

17

for use by trial courts when determining certification of a judgment and for use by appellate courts when conducting de novo reviews when no reasons are given by the trial court for designation. The factors for examining certification are:

> 1) The relationship between the adjudicated and unadjudicated claims;

> 2) The possibility that the need for review might or might not be mooted by future developments in the trial court;

> 3) The possibility that the reviewing court might be obliged to consider the same issue a second time; and

> 4) Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Fakier*, 983 So.2d at 1029 (quoting *Messinger*, 894 So.2d at 1122).

Our analysis of the case at bar under the *Fakier* factors favors designation of the judgment as final. While the unadjudicated and adjudicated damages claims are related, the damages at issue are also tied to the judgment of liability before us on appeal given the fact that the damages are statutorily mandated.

Therefore, we find no error in the trial court's decision to designate the judgment as final.

## CONCLUSION

For these reasons, we find that:

(1)     First Health failed to show that the trial court was divested of jurisdiction prior to the hearing on the motions for summary judgment by the grant of its motion for appeal of its motion to decertify the class.

(2)     The choice of law provision found in First Health's contracts with Plaintiffs cannot circumvent the State's interest in the notice requirements of the PPOA and does not apply in this case.

18

(3)     The trial court correctly found that the prescriptive period applicable to an action for violation of the notice requirements of La.R.S. 40:2203.1 is ten years.

(4)     First Health failed to carry its burden of proving that there is any genuine issue of material fact in dispute or that it can present evidence sufficient to rebut Plaintiffs' prima facie case.

(5)     The trial court did not err in designating the damages portion of its judgment as final.

Therefore, the judgment of the trial court denying First Health's motion for summary judgment and granting Plaintiffs' motion for partial summary judgment is affirmed.  All costs of this appeal are assessed to First Health.

**AFFIRMED.**

19