# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 10-784

## LAKE CHARLES MEMORIAL HOSPITAL (GREGORY LEDAY)

## VERSUS

## AL COPELAND INVESTMENTS

\*\*\*\*\*\*\*\*\*\*\*\*

## APPEAL FROM THE
## OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
## PARISH OF CALCASIEU, NO. 05-01593
## SHELLY DICK, WORKERS' COMPENSATION JUDGE AD HOC

\*\*\*\*\*\*\*\*\*\*\*\*

## JAMES T. GENOVESE
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, James T. Genovese, and David E. Chatelain,\* Judges.

**AFFIRMED AND RENDERED.**

**John V. Quaglino**
**Juge, Napolitano, Guilbeau, Ruli, Frieman & Whiteley**
**3320 West Esplanade Avenue North**
**Metairie, Louisiana 70002**
**(504) 831-7270**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**    Al Copeland Investments**

---

\*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Judy Y. Barrasso**
**Edward R. Wicker**
**Barrasso, Usdin, Kupperman, Freeman & Sarver, L.L.C.**
**909 Poydras Street, Suite 2400**
**New Orleans, Louisiana 70112**
**(504) 589-9700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Al Copeland Investments**

**Thomas A. Filo**
**Cox, Cox, Filo, Camel & Wilson, L.L.C.**
**723 Broad Street**
**Lake Charles, Louisiana 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Lake Charles Memorial Hospital**

**GENOVESE, Judge.**

Al Copeland Investments (Copeland) appeals a workers' compensation judgment in favor of Lake Charles Memorial Hospital (LCMH), awarding LCMH additional compensation for medical services rendered to one of Copeland's injured employees, a statutory penalty, and an attorney fee. LCMH has answered the appeal, seeking additional attorney fees for work done on appeal. We affirm the judgment in all respects. Additionally, we render judgment in favor of LCMH and against Copeland, awarding an additional attorney fee for work performed on appeal.

## FACTS

Gregory LeDay, an employee of Copeland, was injured in a work-related accident for which he sought treatment at LCMH. LCMH billed Copeland for the medical treatment it provided to Mr. LeDay. Copeland forwarded the bill to CorVel Corporation (CorVel) for bill review services. CorVel adjusted the bill in accordance with the Louisiana Workers' Compensation Act's (LWCA) fee schedule[1] and further reduced the amount charged by applying a preferred provider organization (PPO) discount per CorVel's contract with LCMH.[2] Copeland paid the bill as per CorVel's recommendation.

LCMH filed the present action for what it alleged was an underpayment of its bill. The workers' compensation judge (WCJ) ruled in favor of LCMH, finding that Copeland had not proven that there was a contract between Copeland and CorVel that entitled Copeland to take the additional discount under the PPO. The WCJ awarded

---

[1]Pursuant to La.R.S. 23:1034.2, the director of the Office of Workers' Compensation is charged with the responsibility of establishing a reimbursement schedule and with adopting the rules and regulations for the establishment and implementation of same.

[2]The record contains a copy of CorVel's Preferred Provider Organization "CorCare" Hospital Agreement with LCMH.

LCMH $36.75 for the underpayment, a $2,000.00 statutory penalty, and an attorney fee of $3,500.00. Copeland appeals, and LCMH has answered the appeal.

## ASSIGNMENTS OF ERROR

Copeland asserts on appeal that "[t]he trial court erred in finding that Copeland[] did not meet its burden of proving that it had an agreement with CorVel Corporation to access CorVel's preferred provider network discounts." Additionally, Copeland contends that "[t]he trial court erred in granting a penalty and an attorney[] fee in this matter."

LCMH has answered the appeal, seeking an award of additional attorney fees for work performed on appeal.

## LAW AND DISCUSSION

Copeland argues on appeal that the trial court erred in finding that it failed to prove the existence of an agreement between Copeland and CorVel. As set forth below, even if such an agreement had been proven, Copeland was still not entitled to reduce the amount of payment by applying a PPO discount due to lack of notice. Therefore, we pretermit a discussion of this assignment of error.

The issue of the legality, *vel non*, of PPO contracts whereby an employer pays a health care provider for services rendered to an injured employee at a negotiated amount below that statutorily provided by the LWCA's reimbursement schedule has now been decided by our supreme court in its recent decision of *Agilus Health v. Accor Lodging North American*, 10-800 (La. 11/30/10), __ So.3d __. In *Agilus*, our supreme court held that "the LWCA does not prohibit PPO agreements providing for discounted fees for workers' compensation services to health care providers." *Id.* at __. However, that pronouncement does not resolve all of the issues set forth in the present appeal.

2

Cognizant of the issue having been raised in other cases, the supreme court's opinion in *Agilus* expressly notes the following:

> The plaintiff in the instant case did not argue to this court that the defendants did not give proper notice pursuant to the requirements of La.R.S. 40:2203.1. The plaintiffs raised the issue in their pre-trial memorandum, but failed to argue this position in the court of appeal and to this court. **While notice under La.R.S. 40:2203.1 is an issue in similar cases, because this issue was not raised in connection to this writ application, we will not reach it in this opinion**.

*Id.* at __ , n.4 (emphasis added).

**In the instant matter, however, the notice provision in La.R.S. 40:2203.1 is at issue.** It is, therefore, incumbent upon this court to consider this issue. We do so mindful of the recent jurisprudence. *Gunderson v. F.A. Richard & Assocs., Inc.*, 09-1498 (La.App. 3 Cir. 6/30/10), 44 So.3d 779; *Cent. La. Ambulatory Surgical Ctr., Inc. v. Payless Shoesource, Inc.*, 10-86, 10-91, 10-92, 10-96, 10-97, 10-99, 10-100, 10-115, 10-117, 10-118 (La.App. 3 Cir. 7/28/10), __ So.3d __, *rev'd in part on reh'g*, 2010 WL 4146106 (La.App. 3 Cir. 10/20/10), __ So.3d. __. In each of these cases, just as in the matter before us, claims were brought by health care providers who asserted that they were improperly being paid in workers' compensation cases at reduced rates pursuant to PPO agreements instead of the rates provided by the LWCA fee schedule. Additionally, in each of these cases, the health care provider argued that even if the PPO contracts were valid and held not to be violative of the LWCA, they were nonetheless unenforceable due to the failure of the employer to give the requisite notice under La.R.S. 40:2203.1 (Title 40 notice).[3] To the contrary,

---

[3]Louisiana Revised Statutes 40:2203.1 (emphasis added) provides, in pertinent part, as follows:

> A. Except as otherwise provided in this Subsection, **the requirements** of this Section **shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state** and to group purchasers as defined in this Part. The provisions of this Section shall not apply to a group

the employer asserted that the notice provisions were inapplicable to workers' compensation patients.

This court in *Gunderson*, 44 So.3d at 787 (footnote omitted), finding the notice provisions in La.R.S. 40:2203.1 to be applicable, reasoned that "when

---

purchaser when providing health benefits through its own network or direct provider agreements or to such agreements of a group purchaser.

B. A preferred provider organization's alternative rates of payment shall not be enforceable or binding upon any provider unless such organization is clearly identified on the benefit card issued by the group purchaser or other entity accessing a group purchaser's contractual agreement or agreements and presented to the participating provider when medical care is provided. When more than one preferred provider organization is shown on the benefit card of a group purchaser or other entity, the applicable contractual agreement that shall be binding on a provider shall be determined as follows:

(1) The first preferred provider organization domiciled in this state, listed on the benefit card, beginning on the front of the card, reading from left to right, line by line, from top to bottom, that is applicable to a provider on the date medical care is rendered, shall establish the contractual agreement for payment that shall apply.

(2) If there is no preferred provider organization domiciled in this state listed on the benefit card, the first preferred provider organization domiciled outside this state listed on the benefit card, following the same process outlined in Paragraph (1) of this Subsection shall establish the contractual agreement for payment that shall apply.

(3) The side of the benefit card that prominently identifies the name of the insurer, or plan sponsor and beneficiary shall be deemed to be the front of the card.

(4) When no preferred provider organization is listed, the plan sponsor or insurer identified by the card shall be deemed to be the group purchaser for purposes of this Section.

(5) **When no benefit card is issued** or utilized by a group purchaser or other entity, **written notification shall be required** of any entity accessing an existing group purchaser's contractual agreement or agreements at least thirty days prior to accessing services through a participating provider under such agreement or agreements.

C. A preferred provider organization agreement shall not be applied or used on a retroactive basis unless all providers of medical services that are affected by the application of alternative rates of payment receive written notification from the entity that seeks such an arrangement and agree in writing to be reimbursed at the alternative rates of payment.

D. In no instance shall any provider be bound by the terms of a preferred provider organization agreement that is in violation of this Part.

4

La.R.S. 40:2203.1 states that it applies to 'all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part,' it in fact, means all such agreements." Consistent therewith, this court in *Central Louisiana Ambulatory Surgical Center, Inc.*, __ So.3d. at __, opined as follows:

> We conclude and hold that the specific notice provisions of La.R.S. 40:2203.1 apply to workers' compensation patients in a PPO network.
>
> Our decision on the necessity of notice is consistent with the very recent opinion of our court in *Gunderson v. F.A. Richard & Associates, Inc.*, 09-1498 (La.App. 3 Cir. 6/30/10), [44 So.3d 779]. We agree entirely with *Gunderson*.

We agree with the reasoning in the foregoing opinions and find no reason to deviate from their holdings. Accordingly, we incorporate the analyses of these opinions as though set out herein in full. That being the case, even if an agreement, oral or otherwise, existed between Copeland and CorVel, because the record is clear that Title 40 notice was not given to LCMH nor was any benefit card issued, Copeland was not permitted to take advantage of the discounted rates to which it purports to be entitled to under the PPO agreement.

For the foregoing reasons, we conclude that Copeland failed to fully pay for the medical expenses of its injured employee as required by La.R.S. 23:1203. This underpayment of medical expenses subjects Copeland to the imposition of a penalty and attorney fee unless the claim was reasonably controverted or resulted from conditions over which the employer had no control. La.R.S. 23:1201(F)(2).

On the issue of the WCJ's award of a statutory penalty, we agree with and choose to follow *Central Louisiana Ambulatory Surgical Center, Inc.*,

5

__ So.3d at __,[4] wherein we stated on rehearing:

> While Defendants may have a plausible argument on the impropriety of awarding penalties under La.R.S. 23:1201(F)(4) based on the validity of the PPO discount agreement, the argument is untenable with regard to the notice provisions of La.R.S. 40:2203.1. *Gunderson v. F.A. Richard & Associates, Inc.*, 09-1498 (La.App. 3 Cir. 6/30/10), [44 So.3d 779], explained that La.R.S. 40:2203.1 was clear and unambiguous. When a statute refers to "all preferred provider organization agreements," it means just that. Defendants in these consolidated cases were aware of these clear provisions and cannot escape their applicability with protestations of ambiguity.

Based on the failure to comply with the notice requirements of La.R.S. 40:2203.1, even if a contractual right to the PPO discount had been established by Copeland, we find no manifest error[5] in the WCJ's award of a $2,000.00 statutory penalty.

The WCJ also awarded LCMH a $3,500.00 attorney fee. On the issue of the attorney fee award, we likewise find no manifest error in the WCJ's attorney fee award of $3,500.00.

We also find that LCMH is entitled to an additional attorney fee for work performed on appeal. We, therefore, render an attorney fee award of $2,500.00 in favor of LCMH for work performed on appeal.

## DECREE

For the foregoing reasons, we affirm the judgment in all respects. Additionally, we render judgment in favor of Lake Charles Memorial Hospital and against Al Copeland Investments in the amount of $2,500.00 as an additional attorney fee

---

[4]Having found no prohibition in the taking of PPO discounts in workers' compensation matters, our supreme court in *Agilus* did not reach the issues of penalties and attorney fees.

[5]"The determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers' compensation action is essentially a question of fact. Factual findings are subject to the manifest error or clearly wrong standard of review." *Authement v. Shappert Eng'g*, 02-1631, p. 12 (La. 2/25/03), 840 So.2d 1181, 1188-89 (citing *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551).

necessitated by the present appeal.  We assess all costs of this appeal to Al Copeland

Investments.

**AFFIRMED AND RENDERED.**